No. 77.—ADAM CASON, plaintiff in error, *vs.* THOMAS CHEELY & Co. defendants.

[1.] Contracts for the sale of goods, wares and merchandise, are not excluded from the operation of the 17th section of the Statute of Frauds, because they are executory.

[2.] Contracts for goods not *in esse* at the time, and of a peculiar character so as to be unsuited to the general market, to be made by the work and labor and with the material of the vendor, at the instance of the purchaser, are not within the 17th section of the Statute of Frauds.

[3.] But all such contracts as do not *primarily* contemplate work and labor to be done, or material to be furnished by the vendor, at the instance of the purchaser, and for his use and benefit, and in which work and labor are not the *essential* consideration, are within the 17th section of the Statute of Frauds, although work and labor may be requisite to make the goods or to fit and prepare them for delivery.

[4.] Cotton prepared for market : *Held* to be goods and merchandise, within the meaning of the 17th section of the Statute of Frauds.

Assumpsit, in Warren Superior Court. Tried before Judge SAYRE, April Term, 1849.

Thomas Cheely & Co. brought an action of assumpsit against Adam Cason, on an alleged contract made 23d September, 1846, by which Cheely & Co. bargained and contracted with Cason for the whole of his crop of cotton for the year 1846, for which they agreed to pay at seven cents per pound, and Cason agreed to deliver the cotton at the cotton factory of Cheely & Co. as soon as the same could be gathered and prepared for market. The peti-

tion alleged a breach of this contract by Cason, in failing and refusing to deliver the cotton.

To this suit Cason pleaded the Statute of Frauds and Perjuries, 29 *Charles II.*

The Court below overruled the plea and gave judgment for the plaintiffs, and defendant excepted.

JOHNSON & THOMAS and JOS. W. THOMAS, for plaintiff in error.

A. H. H. DAWSON and W. C. DAWSON, for defendants.

*By the Court.*—NISBET, J. delivering the opinion.

The contract in this case was for the whole of the crop of cotton of the defendant for the year 1846. The plaintiffs below stipulated to pay the defendant seven cents a pound for it, and he agreed to deliver it at their factory as soon as it could be gathered and prepared for market. The contract was entered into in the month of September of that year, and of course after the crop was planted.

The question is, whether it is within the 17th section of the Statute of Frauds, which is in the following words : " No contract for the sale of goods, wares and merchandise, for the price of ten pounds sterling or upwards, shall be allowed to be good, except the buyer shall accept part of the goods so sold, and actually receive the same, or give something in earnest to bind the bargain or in part of payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged by such a contract, or their agent thereunto lawfully authorized." *Prince,* 917. There was no part acceptance, or any thing given in earnest, or note or memorandum signed by the parties. In considering this question, it is well to bear in mind, that the object of the Statute is to prevent frauds, and the perjuries which are often resorted to, to sustain them. It was considered by the British Parliament, that in contracts for the sale of goods, wares and merchandise, a wide field for fraud would be opened, and ample inducement and opportunity afforded for perjury, and subornation of perjury, if they were permitted to rest in parol, and to be dependant upon the memory of

men for their enforcement. Hence the requirement, that except in the excepted cases, they should be in writing. What contracts are within this section of the Statute, has been very much contro-verted in England. The decisions are not uniform or consistent. In fact, they are contradictory. A careful study of them, how-ever, will enable one to arrive at a satisfactory conclusion as to what is the law of England on this subject.

[1.] I state then, in the first place, that a contract is not exclu-ded from the operation of the Act, because it is executory. The starting point of the decisions in England, may be assumed to be the case of *Tower vs. Osborne,* (*Stra. R.* 506.) That case was founded on a contract for a *chariot,* agreed to be constructed for the defendant by the plaintiff, at the instance of the defendant. It was held not to be within the grasp of the Statute. The re-port of that case is very meagre, but from the case itself, and from the comments made upon it subsequently by *Lord Kenyon* and *Lord Loughborough,* and other eminent Judges, it is manifest that it did not go upon the ground simply that the contract was executory. The contract was for a specific article—a chariot—ordered perhaps to please, in form and color, a capricious fancy—unlike any, it may be, of the kind ever seen or imagined, and, therefore, not saleable in market—a thing which no body would buy but him that ordered it, and if not paid for by him, would prove an entire loss to the maker. It was not a purchase of a chariot *now* made and to be delivered at a future day, but an or-der, by agreement, for the construction, and delivery when com-pleted, of a chariot. The essential consideration of the contract was, work and labor to be performed, and material to be furnish-ed, and upon that ground, beyond all question, the case went. Such was the view which Lord *Kenyon* took of it, for in *Cooper vs. Elston,* he, speaking of it, said, "that was a mere contract for work and labor." 7 *T. R.* 16: See also, *Rondeau vs. Wyatt,* 2 *H. Bl.* 63.

The case of *Clayton vs. Andrews,* is the next in order of time, and out of that case has sprung the idea that executory contracts are not within the Statute. It was determined upon the author-ity of *Towers vs. Osborne,* and must be considered as resting upon the same basis with it. *That* was held not to be within the Sta-tute, upon the ground that work and labor was the consideration of the contract, so *this.* In *this,* Lord *Mansfield* does not appear

to be desirous of extending the authority of *that case*, but simply to affirm it. The two cases may be said to be *in pari materia*. True, Lord *Mansfield* says, in *Clayton vs. Andrews*, that the Statute relates only to contracts for the sale of goods, where the buyer is *immediately* answerable, without time given him by special agreement, and the seller is to deliver the goods *immediately*, and from these words the idea started, that an executory contract is not within the Statute. Now, his Lordship's words are in conflict with the case which he quotes as authority. If the view of the Statute which he presents, be considered as an exposition of the case of *Towers vs. Osborne*, it is not too much to say, even of Lord *Mansfield*, that he misconceived that case. These two cases are anterior to our Declaration of Independence, and are the only cases directly on the question determined in England before that time. The case of *Clayton vs. Andrews*, I consider as going no farther than *Towers vs. Osborne*, in its authority. Together, therefore, they only show that contracts, where work and labor are the essential consideration, are not within the Statute. They do not show that, up to that time, (to wit : our Declaration of Independence,) it was settled in England, that contracts are without the Statute, because they are executory. If, however, the case of *Clayton vs. Andrews* be considered as going that length, (and I admit in the reported language of Lord *Mansfield* it does,) then I say, that it is the only case before that time which does go that length. And whilst we are bound to enforce the construction of the•Statute of Frauds, as understood at the era of our independence, yet it must be a construction settled by a series of adjudications. One case—certainly one case of doubtful meaning, cannot be considered as settling the construction of a Statute ; particularly when that case (which is true as to the case of *Clayton vs. Andrews*) has been repeatedly denied by English Judges to have established a construction of the Statute, and was, very early after it occurred, overruled. (That it was overruled, see *Cooper vs. Elston*, and *Rondeau vs. Wyatt*, *supra*.)

I consider it now as well settled in England and in our States, that the fact that a contract is executory does not of itself take a case out of the Statute. And why should it ? / The reasons upon which the policy of the Statute rests, apply with greater force to executory than to executed contracts. In the former there is opened a wider field for fraud than in the latter. / In the former,

by reason of time, there is more room for the uncertainty, and imperfection and failure of human recollection, and therefore increased chances for perjury. *'* Comparatively little litigation can grow out of an executed contract—the execution concludes in most cases the rights of parties; whereas, where contracts are *to be* consummated, misconstructions of what they are, imperfect compliance, or total failure to comply, are fruitful sources of litigation. *}* If this construction prevails, as said by *Grose*, J. in *Cooper vs. Elston*, it will be a repeal of the Statute. I should remark, too, before passing from this branch of this discussion, that the facts of the case of *Clayton vs. Andrews* show, that it may be reconciled with *Towers vs. Osborne;* for in the former something was to be done to put the article (wheat) into a condition to be delivered. So thought the Judges in *Cooper vs. Elston.* Upon this view of it, it was a case resting upon work and labor.

Now, it is true that those contracts which are held *to fall* without the Statute, are executory contracts. All contracts for work and labor *to be done,* are executory. As in the case of *Towers vs. Osborne*—a chariot *to be* built; but they do not fall without it because they are executory, but because the consideration is work and labor. A rule that would exclude from the range of the Statute executory contracts, *per se*, would include not only those where work and labor are stipulated for, but all others where the delivery is postponed, and payment also until delivery. For example—a contract for a package of dry goods or a box of hardware, now in store, to be delivered sixty days hence, and to be paid for only on delivery, would be an executory contract, and, therefore, embraced in the rule. But I apprehend no book extant can show a case where such a contract has been held not to be within the 17th section of the Statute of Frauds; and upon this view many of the loose dicta to be found in the books, to the effect that executory contracts are not within the Statute, may receive a consistent solution.

[2.] The distinction upon which this question turns, to my mind, is this—if the contract is for the sale of goods, it is within the Statute, and if for work and labor done, it is not. The real difficulty is to fix a rule by which it may be determined what contracts are for the sale of goods, and what for work and labor done. There are two classes of cases which are easily determinable. Where the article exists at the time *in solido*, and is capable

of immediate delivery, (as cotton in bags,) the contract is clearly within the Statute, as in *Cooper vs. Elston.* All contracts for the sale of goods, existing at the time *in solido,* and capable of immediate delivery, constitute a class about which there can be no difficulty—they are within the Statute, without a case to the contrary. The other class of contracts which are equally free from difficulty, are like that in *Towers vs. Osborne,* where an agreement is made for goods not *in esse,* and, therefore, incapable of immediate delivery, but by the agreement to be made by the work and labor, and with the material of the vendor, and which, when made, may be reasonably presumed to be unsuited to the general market. Such as contracts for the manufacture of goods suited alone to a particular market, or for the painting of one's own portrait. In the former class, the contracts are for the sale of goods upon which no work or labor is to be bestowed. In the latter class, the work and labor and material constitute the prime consideration. They are for work and labor, and are, by authority and upon principle, without the influence of the Statute. *Ex equo et bono,* a man who agrees to bestow his labor in the manufacture of goods for a price, and which price he must lose unless the goods are received by him who ordered them, ought to be paid; and a Statute which would protect the purchaser from liability in such a case, would be alike impolitic and unjust.

The cases which are difficult of determination, are those which partake in some degree of both the classes referred to, yet fall decidedly within neither. Contracts for goods upon which some labor must be bestowed to prepare them for delivery, and which, when ready for delivery, are vendible in the general market. That the law in relation to such contracts was considered unsettled in England in the ninth year of the reign of George IV. is obvious from the Act of Parliament of that year, amendatory of the 17th section of the Statute of Frauds. That Statute, among other things, enacts, that that section of the Statute of Frauds " shall extend to all contracts for the sale of goods for the value of ten pounds sterling and upwards, notwithstanding the goods may be intended to be *delivered at some future time,* or may not at the time of such contract be actually *made, procured or provided, or fit or ready for delivery, or some act may be requisite* for the making or *completing* thereof, or *rendering the same fit for delivery.*" This Statute has not been construed so as to repeal the set-

Cason *vs.* Cheely & Co.

tled law as to the second class of cases which I have referred to. Of course the settled law as to the first class mentioned by me, is not disturbed. This Act, I think, may be considered as declaratory of the paramount opinion in England as to what was the construction of the 17th section of the Statute of Frauds, touching the classes of cases which it enumerates. Which paramount opinion I take to be, that contracts for goods, which at the time *are not actually made, procured or provided, or fit or ready for delivery,* or upon which *some act may be requisite to be done for the making or completing them, or to render the same fit for delivery,* are not necessarily without the operation of that section. Contracts for the purchase of goods upon which some labor is neces· sary, not to make them, but to prepare them for delivery, have, it is true, been determined not to be within the Statute before it was amended. Such was the contract in the case of *Clayton vs. Andrews.* There *wheat* was bought, which had to be thrashed before it could be delivered. I can see no reason whatever, why all such contracts are not fully within the policy and fair intent of the Statute, nor is their any controlling reason why they should constitute exceptions. From the time of Lord *Mansfield* to this . day, I do not find an unvarying course of decision upon the character of contracts last named. We are disposed to adopt a rule in relation to them in accordance with what I take to be the spirit of the Act of 9 *George IV.* which has been sustained in England by many decisions, and which has been very generally adopted by our own Courts.

There really is but one exception to the operation of the Statute, to wit: contracts for work and labor; and this grows out of the palpable injustice of compelling a man, by law, in any case to lose the price of his labor. All cases which are not within the reason of this exception, are not within the exception itself. Hence it is that a contract for goods, (cotton bagging, or cotton cloth, if you please,) which are of pretty uniform value, of common consumption, and, therefore, very generally in demand, with a manufacturer of these articles, is not within the exception, although not *in esse* at the time, and to make which work and labor are necessary. The manufacturer does not necessarily lose the price of his labor—if the purchaser does not take the goods, others will—the work and labor bestowed are in the line of his business, and his work and labor would be bestowed in the production of

such goods had the contract not been made. The goods and their price are the considerations of the contract, and not the work and labor and their price. With greater reason a contract for goods upon which work and labor must be bestowed, not to make them, but to prepare them for delivery, as the threshing of wheat, is not within the exception.

[3.] In the light of all these views, the rule which we adopt and which I find admirably well expressed by Judge *Butler* in *Bird vs. Muhlenburg*, (1 *Richardson's R.* 202,) is this : Such contracts only are excluded from the operation of the 17th section of the Statute of Frauds, "*as primarily contemplate work and labor to be done, at the instance of the purchaser, and for his use and accommodation; so as to make the work and labor of the contracting vendor, or such as he may procure to be bestowed at his expense, the essential consideration of the contract.*" The cases which recognise the principle thus expressed are numerous. I refer specially to a few.

In *Garbut vs. Watson*, there was a verbal contract by the plaintiffs, who were millers, for the sale of a quantity of flour, which, at the time, was not prepared and in a state capable of immediate delivery, because not ground. This was held a contract within the 17th section of the Statute of Frauds. *Abbot*, C. J. said, "in *Towers vs. Osborne*, the *chariot* which was ordered to be made, would never, but for that order, have had any existence ; but here the plaintiffs were proceeding to grind the flour for the purpose of general sale, and sold this quantity to the defendant as a part of their general stock." *Bayley*, J. said, " The nearest case to this is *Clayton vs. Andrews ;* but that decision was corrected by *Rondeau vs. Wyatt*. This was substantially a contract for the sale of flour, and it seems to me immaterial whether the flour was, at the time, ground or not. The question is, whether this is a contract for goods or for work and labor and materials found. I think it is the former, and if so, falls within the Statute of Frauds." *Holroyd*, J. said, " I am of the same opinion. I cannot agree with the judgment of the Court in *Clayton vs. Andrews*," &c. 5. *B. & Ald.* 613. This case overrules *Clayton vs. Andrews*. It also overrules *Groves vs. Buck*, (3 *M. & S.* 178,) to the same effect with *Clayton vs. Andrews*. See opinion of *Park*, J. in *Smith vs. Surnam,* (9 *B. & C.* 561.) The contract in *Smith vs. Surnam* was for trees growing on the land of plaintiff, to be deliver-

ed to the defendant, and was held within the 17th section of the Statute. *Bayley*, J. said, " It was said that this was a mixed contract for goods and chattels, and for work and labor to be bestowed and performed by the plaintiff for the defendant. It seems to me that the true construction of the bargain is, that it is a contract for the future sale of the timber when it should be in a state fit for delivery. The vendor, so long as he was felling it and preparing it for delivery, *was doing work for himself and not for the defendant.*" *Littledale*, J. holds this pointed language—" But where the contracting parties contemplate a sale of goods, although the subject matter at the time of making the contract does not exist in goods, but is to be converted into that state by the seller's bestowing work and labor on his own raw materials, that is a case within the Statute. It is sufficient, that at the time of completing the contract, the subject matter be goods, wares and merchandise. I cannot assent to any case which has decided that such a contract is not within the Statute." In *Watts vs. Friend*, A agreed to supply B with a quantity of turnip seed, and B agreed to sell the crop of seed produced therefrom at a stipulated price. This was held to be a contract within the Statute of Frauds, (17th section.) Because, said Lord *Tenterden*, C. J. "the thing agreed to be delivered would, at the time of delivery, be a personal chattel." This is a strong case for our position. Work and labor was here necessary to *produce the article.* It was an agricultural product, to be grown and prepared for delivery by planting and culture, as the cotton in the case at this bar. 10 *B. & C.* 446. To the same effect see 5 *Har. & J.* 213. 8 *Cow.* 215. 1 *D. & R.* 219, *S. C.* 21 *Pick.* 205. 23 *Wend.* 270. 5 *Ib.* 139. 1 *Richardson's R.* 199. 9 *Metclf. R.* 137. 6 *Taunt.* 11, *and generally Chitty on Contracts*, 385, '6, '7. 2 *H. B.* 63. 7 *T. R.* 14. 5 *B. & Ald.* 613. *Mov. & M.* 408. 10 *J. R.* 364. 18 *Ib.* 58.

[4.] It remains to apply these principles to the case before me. The contract was for the delivery of cotton *prepared for market.* I presume that cotton prepared for market will not be denied to come under the denomination of goods and merchandise. This contract was not for work and labor in the production of a peculiar article, and generally unsaleable, for cotton is, beyond any other merchandise in this country, saleable in the general market and in prompt demand; and although work and labor was necessary to make and prepare it, yet the contract does not contem-

plate, *primarily,* work and labor to be done at the instance of the purchaser, and for his benefit, so as to make work and labor the *essential* consideration between the parties.   The *cotton, when delivered,* was clearly the subject matter and ultimate object of the contract.   The article (cotton) was in the line of the plaintiff's business—that of planting.   He had already planted his crop, for the contract for its proceeds was entered into beyond the time (23d of September,) when cotton could be planted and cultivated with success.   The same work and labor which he would be required to bestow upon it under the contract, he would have been compelled to bestow upon it if the contract had never been made. This, if there were nothing else to prove it, demonstrates that work and labor were not the consideration of the contract. Whilst he (the plaintiff) was working and laboring to make this cotton, *" he was working and laboring for himself and not for the defendant."*

This, in our judgment, was a contract for the sale of goods, and within the 17th section of the Statute of Frauds.   The plea must prevail.

Let the judgment below be reversed.