# FORSYTH & INGRAM v. MANN BROTHERS.

### JANUARY TERM, 1895.

*Statute of frauds. Contract to furnish special article. Damages.*

1. A contract for the furnishing of a particular article, intended for a special purpose and not adapted to the general market, is not within the statute of frauds as a contract for the sale of goods.

2. So held with reference to a contract to furnish a granite monument of a special design for a particular purpose.

3. The fact that the defendants, who were quarrymen and manufacturers of granite, were not compelled by the contract to build the monument themselves, but were at liberty to purchase a part or all of it elsewhere, does not vary the rule.

4. The defendants contracted to furnish the monument within a certain time. Upon learning that the defendants would not furnish it, the plaintiffs at once procured stock and had the monument cut. Owing to the circumstance that the work must be done in the winter, the monument cost more than it otherwise would. *Held*, that the plaintiffs could recover the difference between the contract price and the actual cost, and that the fact that the monument was furnished somewhat sooner than the defendants' contract provided, was immaterial, it not appearing that the cost was thereby increased.

5. The personal services of the plaintiffs in procuring stock and superintending the construction were properly reckoned as a part of the cost.

6. A change in the quality of a portion of the stock for the better should not be considered if the cost was no more.

Assumpsit. Plea, the general issue. Trial by court at

the March term, 1895, Washington county, START, J., presiding. Judgment for the plaintiffs. The defendants except.

*John W. Gordon* and *George W. Wing* for the defendants.

The contract was within the statute of frauds. Benj. Sales, Bennett's Ed., s. 102 ; *Lee* v. *Griffin*, 1 B. & S. 272 ; *Pawelski* v. *Hargreaves*, 47 N. J. L. 334 ; *Cook* v. *Willard*, 65 N. Y. 352 ; *Goddard* v. *Binney*, 115 Mass. 450 ; *Gardner* v. *Joy*, 9 Met. 177 ; *Lamb* v. *Crafts*, 12 Met. 356 ; *Clary* v. *Nichols*, 107 Mass. 547 ; Brown, St. Fr., 5th ed., s. 308 ; *Hight* v. *Ripley*, 19 Me. 139 ; *Pitkin* v. *Noyes*, 48 N. H. 294 ; *Prescott* v. *Lock*, 51 N. H. 94 ; *Atwater* v. *Hough*, 29 Conn. 508 ; *Ide & Smith* v. *Stanton*, 15 Vt. 685 ; *Ellison et al.* v. *Brigham*, 38 Vt. 64 ; *Smith* v. *Surman*, 8 B. & C. 561.

*W. A. Lord* and *Dillingham, Huse & Howland* for the plaintiffs.

The contract was not within the statute. *Ellison et al.* v. *Brigham*, 38 Vt. 64.

ROWELL, J.   The plaintiffs carried on a wholesale granite business, and the defendants quarried and manufactured granite.   The plaintiffs having agreed to furnish a monument for the state of Minnesota, to be erected at Gettysburg, contracted with the defendants therefor at and for the price of $4,100.   The court says it did not find that the defendants were to bestow their personal skill and labor upon the monument, nor that there was anything in the understanding or agreement that would have prevented them from purchasing it elsewhere in whole or in parts, instead of manufacturing it from their quarries and at their shop.

The defendants' original offer in the premises was in writing, but was so modified by verbal changes before acceptance that the contract must be regarded as resting wholly in parol; and the principal question is, whether it is within the statute of frauds.

The cases on the subject are conflicting and irreconcilable, but capable of a somewhat accurate classification. *Clay* v. *Yates*, 1 H. & N. 73, was for printing a book and finding materials, and was discussed as if the question was quite new and without authority. The contract was held not to be within the statute of frauds. The true criterion was said to be, whether work is the essence of the contract, or whether it is the materials supplied. Pollock, C. B., said that his impression was that in the case of a work of art, whether in gold, silver, marble, or plaster, where the application of skill and labor is of the highest description, and the material is of no importance compared with the labor, the price could be recovered as work, labor, and materials; that no doubt in such cases it is a chattel that is bargained for, and if delivered, could be recovered for as goods sold and delivered, but still it could also be recovered for as work, labor, and materials. It is said in *Lee* v. *Griffin*, 1 B. & S. 272, that this case is *sui generis*, and the test there adopted is rejected, though the court said they should be bound to follow it in a case precisely similar in its circumstances. *Lee* v. *Griffin* is an extreme case. It was brought by a dentist to recover for artificial teeth made for a lady who died before she took them, and of whose will the defendant was executor, and held to be within the statute of frauds as being a contract for the sale of goods. Crompton, J., says: "The teeth are the principal subject-matter; and the case is near that of a tailor who measures for a garment and afterwards supplies the article fitted"; and he lays down this test: "When the contract is such that a chattel is ultimately to be delivered by the plaintiff to

the defendant, when it has been sent, the cause of action is, goods sold and delivered." Hill, J., states the test thus: "When the subject-matter of the contract is a chattel to be afterwards delivered, then the cause of action is, goods sold and delivered, and the seller cannot sue for work and labor." Blackburn, J., thus:

"If the contract be such that it will result in the sale of a chattel, the proper form of action, if the employer refuses to accept the article when made, would be for not accepting. But if the work and labor be bestowed in such a manner that the result would not be anything that could properly be said to be the subject of sale, then an action for work and labor is the proper remedy."

He said he did not think that the relative value of the labor and the materials on which it was bestowed can in any case be the test of what is the cause of action; that if a sculptor contracts to execute a work of art for another, much as the value of the skill might exceed that of the materials. the contract would, nevertheless, be for the sale of a chattel. This case is said to have settled the law in England, and from it Mr. Benjamin deduces this rule:

"If the contract is intended to result in transferring, for a price, from A to B, a chattel in which B had no previous property, it is a contract for the sale of a chattel; and unless that be the case, there can be no sale." 1 Benj. on Sales, 121, Corbin's ed.

Mr. Brown says that all the cases under this head of the statute have been cases of contracts that, when carried out, resulted in the sale of a chattel; that the very question has always been whether, notwithstanding that fact, the particular contract should be regarded as for, not the resulting chattel, but the labor or the technical or artistic skill of which the purchaser was to receive the benefit; and that the case of *Lee* v. *Griffin* seems to reject rather than to illustrate this difficult distinction, which a long course of authority has introduced into the law of the construction of the statu.e. Brown on Stat. Frauds, 5th ed., s. 309 a.

In New York they go to the other extreme, and hold that an agreement for the sale of a thing not in existence at the time, but which the contractor is to manufacture or to put into condition to be delivered, is not a contract of sale, and so not within the statute. The difference between their rule and the English rule is this; one looks to the time at which the contract was made; the other to the time at which it is to be performed, and if then it is a chattel, it is a sale. *Cook* v. *Willard*, 65 N. Y. 352. Some of the states follow the New York rule more or less closely, while others do not, and also reject the English rule as settled in *Lee* v. *Griffin*.

In Massachusetts they have avoided both of these extremes, and hold that a contract for the sale of articles in existence, or for such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods to which the statute applies; but that on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special order and not for the general market, the case is not within the statute. It is said to be true that in "the infinitely various shades of different contracts" there is some practical difficulty in disposing of the questions that arise, yet that there is no ground for saying that there is any uncertainty in the rule itself, and that its correctness and justice are clearly implied or expressly affirmed in all their decisions upon the subject. *Goddard* v. *Binney*, 115 Mass. 450, which was this: The plaintiff agreed to build a buggy for the defendant and to deliver it at such a time. The defendant gave directions as to the style and finish, and it was built accordingly and marked with his monogram. It was destroyed by fire before delivery, and the plaintiff sued for the price. *Lee* v. *Griffin* was pressed upon the attention of the court, and it

was asked to overrule *Mixer* v. *Howarth*, 21 Pick. 205. But the court said that the case before it was a much stronger case than *Mixer* v. *Howarth*, for the carriage was not only built for the defendant, but in conformity in some respects with his directions, and at his request was marked with his initials, and that it was neither intended nor adapted for the general market, and that as they were by no means prepared to overrule that case, they must hold that the statute did not apply to the contract.

Under this rule the test is, not the non-existence of the article at the time of the bargain, as in New York, nor whether the contract will result in the sale of a chattel, as in England, but whether the goods are such as the vendor, in the ordinary course of his business, manufactures or procures for the general market, or whether they are manufactured especially for the vendee and on his special order, and not for the general market, and for which they are neither intended nor adapted.

The equity of this rule is expressly recognized by the supreme court of New Hampshire in *Pitkin* v. *Noyes*, 48 N. H. 294, 2 Am. Rep., 218, 226. In *Cason* v. *Cheeley*, 6 Ga. 554, it is said that *ex aequo et bono*, a man who agrees to bestow his labor in the manufacture of goods for a price, and which price he must lose unless the goods are received by him who ordered them, ought to be paid, and that a statute that would protect the purchaser from liability in such a case would alike be impolitic and unjust. It is no answer to say that the vendor may protect himself in such a case by a memorandum of the contract, for the question is whether the contract comes within the statute.

This court said in *Ellison* v. *Brigham*, 38 Vt. 64, that the fact that work and labor are to be performed upon the subject of the contract before delivery, does not necessarily take the contract out of the statute; that to take it out, the contract must require the performance thereon of such work

and labor as will materially change the character of the property, and make it, when to be delivered, essentially different from what it was when the contract was made; in short, that the contract must be one for manufacture, or in other words, for work and labor. Whether the rule as there stated needs modification, to make it entirely accurate, need not be considered, for it is certainly accurate in embracing, as it does, contracts for the manufacture of goods on special orders, without which they would not be manufactured at all, and for a special purpose, for which alone they are adapted, and for which alone they have value, which is the case with the monument in question. This comes clearly within the Massachusetts rule, which we regard preferable, in this particular at all events, as avoiding the extremes we have noticed, and as best according with the law as understood and administered in this state.

But it is said that as the defendants were not bound to bestow their personal skill and labor upon the monument, but were at liberty to get others to make it for them, it is a contract of sale and not for work and labor. But that makes no difference, as was said in *Bird* v. *Muhlinbrink*, I Rich. Law, (S. C.) 119, 44 Am. Dec. 247, 250. It is not necessary that personal skill and labor should be stipulated for in order to make a contract one for manufacture. It is sufficient if the work and labor requisite to such a contract are to be performed by the contractor or by his procurement and at his expense. The latter would be work and labor done by him, in the eye of the law, and could be declared for as such.

We hold, therefore, that the contract in question is not within the statute.

This leaves no other question that merits consideration except that of damages, and whether the change of stock that plaintiffs made in the top die of the monument defeats recovery.

In the first place, the monument was to be completed by the defendants during the fall of 1892 ; but owing to a strike of granite cutters in May of that year, the time was extended to the spring of 1893. On December 8, 1892, the defendants, claiming that they had failed to get a contract with the plaintiffs for the monument, notified them that they had concluded to stop cutting, and should take no orders for dressed work after that date. The plaintiffs replied on December 22, claiming a contract and insisting upon its performance ; and after waiting a reasonable time for a reply but receiving none, proceeded to purchase stock and have the monument cut. Owing to the difficulty and extra expense of procuring the stock in the winter months, and the limited time after December 22 that plaintiffs had in which to finish the monument in season for delivery in the spring of 1893, the time fixed by their contract with the state of Minnesota, they necessarily expended in and about the business the sum of $5,034.95, and could not have procured the monument for a less sum. Of said sum, $200 were for plaintiffs' personal services in getting stock, having it cut, and superintending the work. If the stock had been procured in warm weather, and the work prosecuted in the usual and ordinary way of doing such work to the best advantage, the monument could have been built and placed on the cars within five months from the time it was commenced, and at an expense not exceeding $4,100. As built, the monument was substantially the same as the defendants were to build, except that the top die was dark stock instead of good, clean, medium stock ; but the plaintiffs paid no more for it than the market value of good, clean, medium stock.

The court allowed as damages the cost of the monument in excess of the contract price, namely, $934.95, with interest thereon.

The defendants object that this excess is not recoverable,

because they say it was occasioned by the limitation of time for the completion of the monument under the plaintiffs' contract with the state of Minnesota, of which time they had no knowledge, and therefore cannot be said to have contracted with reference to it, and hence that such excess is not chargeable to them. It is not quite certain whether the defendants had the spring, or only to the spring, to finish the monument. But if they had the spring, the plaintiffs also had the spring in which to fulfill their contract with Minnesota; and if they had the monument ready for delivery on the 1st of April, which the case does not really show, it does not appear that it cost any more than it would had the plaintiffs taken the whole spring for the work, which was the longest time the defendants had. Hence it does not appear that said excess was occasioned as claimed, but rather that it resulted from the defendants' breach of contract, for as to them, the plaintiffs had a right to complete the monument by the time they were to complete it, and if plaintiffs did it sooner, but at no greater cost than if they had taken the whole time, the defendants cannot complain that they did not know what time the plaintiffs had, for they are not harmed by it.

Defendants further object that nothing should have been allowed for the plaintiffs' personal services. But under the findings this was a necessary expense, and therefore recoverable, the same as though they had paid others for performing the service.

The change of stock in the top die, above mentioned, does not defeat recovery, as claimed, because, if for no other reason, the stock substituted cost no more than that called for by the contract would have cost.

*Judgment affirmed.*