(February 27, 1895.)

SHAW v. MANVILLE.

[39 Pac. 559.]

STATUTE OF FRAUDS—SECTION 6009, SUBDIVISION 4 OF THE REVISED STATUTES CONSTRUED.—S. was a dealer in lumber, etc. M. desiring to purchase certain tanks to be used in mining operations, applied to S. therefor, and on being informed that said articles were not kept by S., requested him to procure them for him from some house in Oregon or California, giving S. a description and specifications of the articles required, to be delivered free on board cars at Boise City, Idaho. S. ordered the articles from a house in Portland, Oregon, and M. not being at home on their arrival, S. stored them in the warehouse of N. On M.'s return S. notified him of the arrival of the goods, at the same time exhibiting to him the bill of lading thereof, and informing him where he had stored them. M. said "he guessed it was all right," and, declining to examine the goods, told S. he would remove them in a few days and pay the balance due on them; paid S. $100 on the purchase price. *Held,* not to be a sale within section 6009 of the Revised Statutes of Idaho.

DISCRETION OF JURY AS TO GENERAL OR SPECIAL VERDICT.—In an action for the recovery of money only, it is within the discretion of the jury to find a general or a special verdict. (Idaho Rev. Stats., sec. 4397.)

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Samuel H. Hays and Henry Z. Johnson, for Appellant.

This being an action for goods sold and delivered, an actual delivery must be shown—a complete relinquishment of all rights of the vendor. He cannot keep the goods and get the price also. (*Atwood v. Lucas,* 53 Me. 508, 89 Am. Dec. 713;

*Hart v. Tyler,* 15 Pick. 171; *Messer v. Woodman,* 22 N. H. 172, 53 Am. Dec. 241; 21 Am. & Eng. Ency. of Law, 576.) Did appellant pay at the time of the making of the contract some part of the purchase money? The only payment was made on July 22d. Payment was not made at the time of the making of the contract, the agreement having been made on June 29th and no new agreement having been made on July 22d. (*Hunter v. Wetsell,* 57 N. Y. 375, 15 Am. Rep. 508; *Bates v. Chesebro,* 36 Wis. 636; *Hanson v. Roter,* 64 Wis. 622, 25 N. W. 530; *Hollenbeck v. Cochran,* 20 Hun, 416; *Kerkhof v. Atlas Paper Co.,* 68 Wis. 674, 32 N. W. 766.) Did the appellant accept and receive the goods? It is well settled that there must be both an acceptance and a receipt to take the case out of the statute; acceptance alone or receipt alone is not sufficient. (*Jamison v. Simon,* 68 Cal. 17, 8 Pac. 502.) To constitute acceptance and receipt there must be something besides mere words, there must be some act of the parties amounting to a transfer of possession. The property must pass unconditionally into the absolute possession and control of the buyer, and must be finally accepted by him. (*Shindler v. Houston,* 1 N. Y. 261, 49 Am. Dec. 316, and note; *Malone v. Plato,* 22 Cal. 103; *Stone v. Browning,* 51 N. Y. 211; *Stone v. Browning,* 68 N. Y. 598; *Shepherd v. Pressey,* 32 N. H. 57; *Hart v. Tyler,* 15 Pick. 171; *Scotten v. Sutter,* 37 Mich. 526; *Knight v. Mann,* 118 Mass. 143; *Knight v. Mann,* 120 Mass. 219; *Dole v. Stimson,* 21 Pick. 384; *Coffin v. Bradbury,* 3 Idaho, 730, 35 Pac. 715.) Where stipulations have been made by the parties and accepted by the court they should be enforced as a matter of absolute legal right. (*Matter of Petition of New York etc. Ry. Co.,* 98 N. Y. 447 (452); *Douglass v. Rogers,* 4 Wis. 304; *Staples v. Parker,* 41 Barb. 648; *McCann v. McLennan,* 3 Neb. 25; *Neill v. Tarin,* 9 Tex. 256. See, also, *Mahony v. Marshall,* 3 Idaho, 284, 31 Pac. 809.) The stipulation provided that appellant should have "until May 5th" in which to prepare, serve and file proposed statement on motion for new trial. The statement was filed and served on May 5th. It was therefore in time. (*Thomas v. Dougless,* 2 John. Cas. 226; *Penn. Placer Min. Co. v. Schreiner,* 14 Mont. 121, 35 Pac. 878; *Gottlieb v. Fred W.*

*Wolf Co.,* 75 Md. 126, 23 Atl. 198.)   It was not necessary to plead the statute of frauds.   The making of the contract was denied and that is sufficient to raise the issue.   (*Feeney v. Howard,* 79 Cal. 525, 12 Am. St. Rep. 162, 21 Pac. 984; *Springer v. Kleinsorge,* 83 Mo. 152; *Duffy v. O'Donovan,* 46 N. Y. 223; Bliss on Code Pleading, sec. 353.)

J. R. Wester, for Respondent.

If the contract in question were within the statute of frauds it could not avail the defendant in this appeal for the reason it was not pleaded in the court below.   (*Kraft v. Greathouse,* 1 Idaho, 254; *McLees v. Hall,* 10 Wend. 426; *Marine Ins. Co. v. Hodgson,* 6 Cranch (U. S.), 206; *Some v. Skinner,* 16 Mass. 348; *Gardner v. Armstrong,* 31 Mo. 535; *Sherwood v. Saxton,* 63 Mo. 78; *Lewis v. Stewart,* 10 How. Pr. 513; *Osborne v. Endicott,* 6 Cal. 149-358, 65 Am. Dec. 498; *Burt v. Wilson,* 28 Cal. 632, 87 Am. Dec. 142; *Jones v. Lloyd,* 117 Ill. 601, 7 N. E. 119; Pomeroy on Specific Performance of Contracts, secs. 140, 141.)   The plaintiff in his complaint alleges part payment of the purchase price, which is not only not denied but admitted by defendant, not alone by his failure to deny it, but by introducing the check showing part payment of goods for the purpose of shifting the responsibility from himself to the Idaho Gold Extraction Company, which is as effectual to take the cause out of the statute of frauds as if the original contract had been in writing and signed by the defendant.   (Idaho Rev. Stats., sec. 6009, subd. 4; *Tyson v. Wells,* 2 Cal. 122.)   Under the well-established doctrine laid down by this court in the case of *Coffin v. Bradbury,* the part payment on July 22d, is sufficient to take the case out of the statute of frauds.   (*Coffin v. Bradbury,* 3 Idaho, 770, 35 Pac. 715.) When was the contract of sale made?   The goods arrived about July 16th.   Shaw notified Manville of their arrival.   He went out to see him and notify him (Manville) of their arrival and learned from defendant's wife that defendant had gone to the mountains and that defendant wanted Shaw to store them; this was done, and about July 22d, Manville returned home and immediately went to plaintiff's office, was shown a memorandum of the goods, said he had no doubt they were all right,

paid $100 on the purchase price, and credit was given him for the rest. This consummated the sale. (2 Kent's Commentaries, 704, note.) It was as complete a delivery and possession as the subject matter reasonably admitted. (*Montgomery v. Hunt,* 5 Cal. 226.) This was a sufficient delivery and acceptance of the goods. (*Williams v. Lerch,* 56 Cal. 330; *Hazard v. Cole,* 1 Idaho, 283, 284; *Tyson v. Wells,* 2 Cal. 122; *Cartwright v. Phoenix,* 7 Cal. 281.) The question of acceptance is a question for the jury and their finding is conclusive. (*Galvin v. McKenzie,* 21 Or. 184, 27 Pac. 1039; Baker on Sales, sec. 282a.)

HUSTON, J.—Shaw, a lumber dealer at Boise City, was applied to by Manville, defendant, for certain tanks, to be used in mining operations. Shaw, not being able to furnish either the tanks, or the materials for making the same, suggested to Manville that he (Shaw) could procure the same for him (the defendant) from Oregon or California, and thereupon received a statement from Manville giving a description of the character and dimensions of the required tanks. Shaw sent the memorandum to a house in Portland, and received in reply a statement fixing the prices at which the tanks would be furnished to him. Shaw submitted this statement to Manville, and Manville requested him to telegraph for the tanks, which he did. Upon the arrival of the tanks, Shaw went to the house of Manville, and, not finding him at home, informed his (Manville's) wife that the tanks had arrived, and was informed by said wife that her husband wished to have the tanks stored until his return. Thereupon Shaw had the tanks stored in the warehouse of one Nourse. A few days after, Manville called upon Shaw, who informed him that the tanks had arrived, and that he could look at them. Manville replied that he "guessed they were all right," and thereupon stated that he was not quite prepared to remove them, and gave Shaw his individual check for $100 in part payment of the price of the tanks. The plaintiff brought an action for the value of said tanks, less the $100 paid. The complaint is for goods, wares, and merchandise sold and delivered, or rather for the balance due therefor. The answer is a general denial. The complaint is latitudinous, and the answer technical. The is-

sues would have been more satisfactorily presented had the pleaders given more recognition to the statutes, in framing and presenting them. Subdivision 2, section 4168 of the Revised Statutes of Idaho, provides that the complaint shall contain "a statement of the facts constituting the cause of action in ordinary and concise language." The complaint in this case does not comply with either the letter or spirit of this statute. It is a general allegation of indebtedness for a balance due the plaintiff from the defendant for goods, wares, and merchandise sold and delivered. This is simplifying pleadings, no doubt, but not upon the lines contemplated by the code. Instead of narrowing the issues to be tried, it amplifies them, and extends opportunity for endless technical objections, all of which are taken advantage of by the defendant. We might feel constrained to enter upon a consideration of the various questions raised and discussed upon the pleadings in this case, were we not admonished by the provisions of our statutes. (See secs. 4, 4207.) The cause was tried by the court with a jury, and resulted in a verdict for plaintiff. Motion for a new trial was made and overruled, and from the judgment upon the verdict, and the order overruling the motion for a new trial, this appeal is taken.

The record contains a statement settled and allowed by the district judge. The exceptions which appear in the record are multitudinous, to a degree of exhaustion. We shall consider those only which were urged upon the hearing, and which seem to us important in the decision of the case. As stated by the appellant in his brief: "The main questions involved, which go to the merits of the case, are: 1. This being an action for goods sold and delivered, has a sufficient delivery been shown to maintain the action? 2. Was there a valid sale, under the statute of frauds (Rev. Stats., sec. 6009, subd. 4)? 3. Was there a sale to appellant, or to the Idaho Gold Extraction Company?"

As to the first question, as we have already intimated, if we were to be governed by the strict rules applicable to common-law pleadings we might be constrained to hold otherwise, but, under the liberal provisions of our code, while the complaint is almost inexcusably faulty, we think it is sufficient, in that

it states the general fact of indebtedness, and for what such indebtedness was incurred, to wit, "For goods, wares, and merchandise sold and delivered."

Was there a valid sale, under the provisions of subdivision 4, section 6009 of the Revised Statutes? This contention calls for the consideration of questions as multitudinous as they are various. In the intricacies of commercial transactions, it is inevitable that circumstances will arise which require careful analysis before any such rule of law can be said to be applicable. Almost every phase of contract has been subjected to the crucial test involved in the exception above stated. It is unnecessary for us to consider, even were it practicable, all of the cases cited for and against the contention of the defendant. The rule enunciated in Wood on Statute of Frauds (page 578) in relation to this class of sales is as follows: "It must be shown that the acts of the vendor and vendee have concurred; that is, that the vendor has delivered the property, and that the vendee, by some decisive act, has accepted it, and waived all right of objection thereto." The contract in this case was one of daily occurrence in this country. The plaintiff was a dealer in lumber, and, incident thereto, in the manufacture and sale of doors, sash, and blinds. The defendant was engaged in mining, wherein he was introducing some new process or processes for the reduction of ores, etc. The defendant required, in the carrying on of his business, a certain quantity or number of wooden tanks, of certain dimensions, and required to be made of a certain kind of lumber. He applies to the plaintiff, who informs him that he does not deal in the article, nor in the kind of lumber required therefor, but at the same time informs defendant that he can procure them for him from a firm in California or Oregon who manufacture and deal in that class of goods, and therefore shows to defendant a descriptive catalogue of the kind of goods required, and defendant selects from such catalogue a certain number of tanks, therein described, and also others of different dimensions from any described in the catalogue, and requests plaintiff to ascertain by correspondence for what price the same can be procured. In compliance with this request of defendant, plaintiff sent to a house in Portland,

Oregon, engaged in the manufacture and sale of said articles, and procured from said firm a statement, in detail, of the prices for which they would furnish the various tanks required by defendant "free on board cars at Boise City." This letter containing said statement was by the plaintiff exhibited to defendant, and, being satisfactory to him, the plaintiff, by his direction and at his request, ordered said articles from the Portland house, in accordance with the terms and conditions contained in the letter of said house to plaintiff. On the arrival of the goods, plaintiff went to the house of defendant, and informed his wife (defendant being absent from home) that said tanks had arrived, and was informed by defendant's wife that he (defendant) was not ready to receive the tanks, but would like to have the plaintiff "store them away for a week or two, until he could take them"; and thereupon plaintiff stored the tanks in the warehouse of one Nourse, as he (plaintiff) alleges, for the defendant. A short time thereafter, defendant called upon plaintiff, and plaintiff informed him what disposition he had made of the goods, and defendant expressed himself entirely satisfied therewith. Plaintiff at the same time exhibited to defendant the bill or shipping memorandum of the goods, and an opportunity was given defendant to examine them; but he declined to do so, saying "he guessed they were all right," and that he would remove them in a short time, at the same time paying to plaintiff $100 on the purchase price of the tanks. The plaintiff, in this whole transaction, seems to have been, to some extent, the mere agent of the defendant. It is true plaintiff became liable to the manufacturer for the goods, but they were ordered by the defendant, upon his specifications and directions, and for prices and upon terms submitted to him and assented to by him; and when they arrived at Boise City, on board cars, they became and were the property of the defendant, and from that time he was responsible for them, at their agreed price, to plaintiff. The plaintiff had done everything he was to do under the agreement between himself and defendant, and had given notice to defendant thereof. The defendant had accepted the goods, and made a part payment therefor. (*Goddard v. Binney,* 115 Mass. 450, 15 Am. Rep. 112, and cases

there cited; Wood on the Statute of Frauds, p. 553, sec. 304, and cases cited.) To undertake to reconcile the innumerable decisions upon this statute "were a task as rash as ridiculous." We shall have done all that is required of us when we have made such an application of the rule prescribed by our statute, to the facts presented by the record, as is required, "with a view to effect its object, and to promote justice."

The third proposition presented by appellant is: "3. Was there a sale to appellant, or to the Idaho Gold Extraction Company? It is contended by the appellant that he made the contract for the purchase of the tanks in question, with defendant, for and as the representative of the Idaho Gold Extraction Company. The evidence upon this question is somewhat conflicting, though we think the preponderance is greatly in favor of the contention of the plaintiff that the contract and sale were made by the defendant wholly upon his own behalf, and not as the agent, manager, or other representative of the Idaho Gold Extraction Company, or anyone else. We are not convinced, from the record of the correctness of the finding of the jury upon this question. We should feel compelled, under the evidence as shown by the record, to recognize the verdict, under the well-established rule that when the evidence is conflicting the appellate court will not disturb the verdict.

The objection of appellant that the verdict of the jury was general, and not special, as stipulated by the parties, is not tenable. The statute (Rev. Stats., sec. 4397) provides: "In an action for the recovery of money only or specific real property, the jury in their discretion may render a general or a special verdict. In all other cases the court may direct a jury to find a special verdict," etc. This was an action for the recovery of money only. Neither the court, by instructions, nor counsel, by stipulation, could enforce the finding of a special verdict by the jury.

Appellant objects that the verdict is excessive. We are not aided much, either by the briefs or oral argument of counsel, on this proposition, and we have been compelled to go to the record for information upon this question. From a careful examination of the evidence, we are constrained to hold that the verdict is excessive, to the amount of forty-seven dollars.

The plaintiff testifies that the value of the four larger tanks was $140 each, but the memorandum from which and upon which the order was based puts the price at $130 each. We think the latter should control, and the judgment will therefore be modified to the extent of forty-seven dollars, being the difference between the sum stated by the plaintiff and that stated in the memorandum from which the order was made, and the interest on such sum. The judgment of the district court is modified by the deduction of forty-seven dollars, and the cause is remanded to the district court, with directions to enter judgment in accordance with this opinion; costs of this appeal to be taxed equally against respondent and appellant.

Morgan, C. J., and Sullivan, J., concur.