## THOMAS GODDARD vs. HENRY P. BINNEY.

Suffolk.　March 14.— September 4, 1874.　COLT & ENDICOTT, JJ., absent.

An executory agreement for the manufacture and sale of a specific chattel, to be manufactured in accordance with the terms of the agreement, is not a contract of sale, within the statute of frauds, Gen. Sts. c. 105, § 5.

When the vendor has done everything he was to do under an executory agreement for the manufacture and sale of a specific chattel, which was to be manufactured in accordance with the terms of the agreement, and has given notice thereof to the purchaser, the general property in the chattel vests in the purchaser, and the chattel is at his risk.

A. agreed to build a buggy for B., and to deliver it at a time certain. B. gave directions as to the style and finish of the buggy, and it was built in compliance with his directions, and marked with his monogram. Before the buggy was finished B. called to see it, and in response to an inquiry of A., asking if he might sell the buggy, replied that he would keep it; when the buggy was finished, A. notified

B., and sent him a bill for it. B. retained the bill and promised "to see" A. "about it." The buggy was afterwards destroyed by the fire while in A.'s possession. *Held,* in a suit by A. for the price that the agreement was not a contract of sale within the Gen. Sts. *c.* 105, § 5; and that the property in the buggy had passed to B., and he was liable.

CONTRACT to recover the price of a buggy built by the plaintiff for the defendant.

Trial in the Superior Court before *Dewey,* J., who reported the case for the consideration of this court in substance as follows :

The plaintiff, a carriage manufacturer in Boston, testified that the defendant came to his place of business in April, 1872, and directed the plaintiff to make for him a buggy, and the plaintiff entered the order in his order-book ; the defendant gave directions that the color of the lining should be drab, and the outside seat of cane, and as to the painting, and also that the buggy was to have on it his monogram and initials. The sum of $675 was agreed as the price. It was to be done in or about four months. The plaintiff immediately began work upon the buggy and made every part, it being painted, lined, and with the initials, as ordered.

The last of August, when the buggy was nearly completed, wanting only the last coat of varnish, and the hanging of it on the wheels, the defendant came to the plaintiff's place of business and asked when it would be done. The plaintiff replied in about ten days, and asked the defendant if he might sell the buggy, or if he wished it, as he, the plaintiff, had opportunities of selling it to others. The defendant then inquired if the plaintiff could furnish him another if he sold that, to which he replied, he could not, as he was going to give up the business of manufacturing, and that unless he took this he could not have any. The defendant then said he would keep this one.

The defendant did not at this, nor at any other time, see the buggy. The buggy was finished September 15, in accordance with the original order. It is usual to keep carriages some time after they are finished to let the paint and varnish harden.

October 14, 1872, the plaintiff sent to the defendant the following bill : " Boston, October 14, 1872. Mr. H. P. Binney. Bo't of Thos. Goddard, one new cane seat buggy, $675. Rec'd Pay't. (Buggy was finished Sept. 15.) "

The bill was presented by a clerk of the plaintiff. The defend ant after looking at it, said he would see the plaintiff soon. The bill was in the plaintiff's handwriting and was kept by the defendant. The same clerk called again soon after and asked the defendant for a check, to which he replied that he would pay it soon, and would see the plaintiff. Calling a third time, before the fire of November 9th, the defendant said, " Tell Mr. Goddard I will come and see him right away." By the fire of November 9, 1872, this buggy and all the property on the plaintiff's premises were destroyed. After the fire the plaintiff again called on the defendant for payment. He wanted to know if it was insured, and said he would see the plaintiff about it.

After the buggy was finished, it was kept with the completed work on the plaintiff's premises; and it was at all times after it was finished till burned worth and could have been sold by the plaintiff for upwards of $700, the value of buggies of the plaintiff's manufacture having advanced after the contract was made in April.

The defendant put in no evidence, and contended that this action could not be maintained, that it came within the provisions of the Gen. Sts. c. 105, § 5, and that there had never been any delivery of the said buggy to the defendant, nor any acceptance thereof by him, and that the property belonged to and was at the sole risk of the plaintiff at the time of the fire, and that if any cause of action arose against the defendant for not taking away the said buggy, it arose prior to the fire, and no damage was caused to the plaintiff thereupon. The plaintiff contended that the contract did not come within the provision of the statute referred to, and that it was the duty of the defendant, upon being notified that the buggy was completed, to take the same away within a reasonable time, and that not having done so the buggy was at the risk of the defendant when burned.

The plaintiff further contended that upon the evidence the jury would be authorized to find that there had been a delivery of the buggy to the defendant, and an acceptance by him, and without submitting that question to the jury it was agreed by the parties, that if there was any evidence which could have properly been submitted to the jury as showing a delivery, and an acceptance of the buggy by the defendant, then it shall be taken that the jury would have found said delivery and acceptance.

Upon the evidence hereinbefore stated, the presiding judge directed a verdict for the defendant; and it was agreed that if the jury would have been authorized to find a delivery and an acceptance by the defendant, or if upon the facts above stated the court is of opinion that at the time of the fire the said buggy was on the premises of the plaintiff, at the risk of the defendant, the verdict is to be set aside, and judgment entered for $675 and interest, from October 15, 1872; otherwise, judgment on the verdict.

*C. A. Welch*, for the plaintiff.

*G. Putnam, Jr.*, for the defendant. The contract between the plaintiff and defendant was not one for labor and materials, but was a contract, the result of which, when carried out, would be the change of property in the chattel from the plaintiff to the defendant, and therefore was a contract of sale within the statute of frauds. Benjamin on Sales, 79 *& seq. Lee* v. *Griffin*, 1 B. & S. 272. *Atkinson* v. *Bell*, 8 B. & C. 277. *Moody* v. *Brown*, 34 Me. 107. In the cases of *Mixer* v. *Howarth*, 21 Pick. 205, and *Spencer* v. *Cone*, 1 Met. 283, it was held that the statute of frauds does not apply to contracts for the manufacture of articles not in the usual course of the vendor's business; but this is on the ground that the statute does not apply to executory contracts, unless they relate to articles usually sold by the vendor. It has never been decided in Massachusetts that such contracts are for labor and material.

The case of *Mixer* v. *Howarth* rests on a supposed distinction which more recent criticism has shown not to be based on principle nor on a sound construction of the statute. Benjamin on Sales, 79. *Lee* v. *Griffin*, and *Moody* v. *Brown*, *supra*. It is noticeable that every case which has since arisen in the Commonwealth, except *Spencer* v. *Cone*, 1 Met. 283, which was decided the next year in a *per curiam* opinion, has been distinguished from it. *Gardner* v. *Joy*, 9 Met. 177. *Lamb* v. *Crafts*, 12 Met. 353. *Waterman* v. *Meigs*, 4 Cush. 497. *Clark* v. *Nichols*, 107 Mass. 547. If the decision of *Mixer* v. *Howarth* rests upon the distinction between articles which the plaintiff usually has for sale in the course of his business and articles which he manufactures expressly to order, then that decision is overruled in principle by the later case of *Lamb* v. *Crafts*, where the court says: "When a person stipulates for the future sale of

articles, which he is habitually making, and which, at the time, are not made or finished, it is essentially a contract of sale, and not a contract for labor." In *Mixer* v. *Howarth*, as in this case, the article was manufactured in the course of the plaintiff's business, and consequently the transaction was a contract of sale, within the meaning of *Lamb* v. *Crafts*.

AMES, J. Whether an agreement like that described in this report should be considered as a contract for the sale of goods, within the meaning of the statute of frauds, or a contract for labor, services and materials, and therefore not within that statute, is a question upon which there is a conflict of authority. According to a long course of decisions in New York, and in some other states of the Union, an agreement for the sale of any commodity not in existence at the time, but which the vendor is to manufacture or put in a condition to be delivered, (such as flour from wheat not yet ground, or nails to be made from iron in the vendor's hands), is not a contract of sale within the meaning of the statute. *Crookshank* v. *Burrell*, 18 Johns. 58. *Sewall* v. *Fitch*, 8 Cow. 215. *Robertson* v. *Vaughn*, 5 Sandf. 1. *Downs* v. *Ross*, 23 Wend. 270. *Eichelberger* v. *M'Cauley*, 5 Har. & J. 213. In England, on the other hand, the tendency of the recent decisions is to treat all contracts of such a kind intended to result in a sale, as substantially contracts for the sale of chattels; and the decision in *Lee* v. *Griffin*, 1 B. & S. 272, goes so far as to hold that a contract to make and fit a set of artificial teeth for a patient is essentially a contract for the sale of goods, and therefore is subject to the provisions of the statute. See *Maberley* v. *Sheppard*, 10 Bing. 99; *Howe* v. *Palmer*, 3 B. & Ald. 321; *Baldey* v. *Parker*, 2 B. & C. 37; *Atkinson* v. *Bell*, 8 B. & C. 277.

In this Commonwealth, a rule avoiding both of these extremes was established in *Mixer* v. *Howarth*, 21 Pick. 205, and has been recognized and affirmed in repeated decisions of more recent date. The effect of these decisions we understand to be this, namely, that a contract for the sale of articles then existing, or such as the vendor in the ordinary course of his business manufactures or procures for the general market, whether on hand at the time or not, is a contract for the sale of goods, to which the statute applies. But on the other hand, if the goods are to be manufactured especially for the purchaser, and upon his special

order, and not for the general market, the case is not within the statute. *Spencer* v. *Cone*, 1 Met. 283. " The distinction," says Chief Justice Shaw, in *Lamb* v. *Crafts*, 12 Met. 353, " we believe is now well understood. When a person stipulates for the future sale of articles, which he is habitually making, and which, at the time, are not made or finished, it is essentially a contract of sale, and not a contract for labor ; otherwise, when the article is made pursuant to the agreement." In *Gardner* v. *Joy*, 9 Met. 177, a contract to buy a certain number of boxes of candles at a fixed rate per pound, which the vendor said he would manufacture and deliver in about three months, was held to be a contract of sale and within the statute. To the same general effect are *Waterman* v. *Meigs*, 4 Cush. 497, and *Clark* v. *Nichols*, 107 Mass. 547. It is true that in " the infinitely various shades of different contracts," there is some practical difficulty in disposing of the questions that arise under that section of the statute. Gen. Sts. *c.* 105, § 5. But we see no ground for holding that there is any uncertainty in the rule itself. On the contrary, its correctness and justice are clearly implied or expressly affirmed in all of our decisions upon the subject matter. It is proper to say also that the present case is a much stronger one than *Mixer* v. *Howarth*. In this case, the carriage was not only built for the defendant, but in conformity in some respects with his directions, and at his request was marked with his initials. It was neither intended nor adapted for the general market. As we are by no means prepared to overrule the decision in that case, we must therefore hold that the statute of frauds does not apply to the contract which the plaintiff is seeking to enforce in this action.

Independently of that statute, and in cases to which it does not apply, it is well settled that as between the immediate parties, property in personal chattels may pass by bargain and sale without actual delivery. If the parties have agreed upon the specific thing that is sold and the price that the buyer is to pay for it, and nothing remains to be done but that the buyer should pay the price and take the same thing, the property passes to the buyer, and with it the risk of loss by fire or any other accident. The appropriation of the chattel to the buyer is equivalent, for that purpose, to delivery by the seller. The assent of the buyer to take the specific chattel is equivalent for the same purpose to his

acceptance of possession. *Dixon* v. *Yates*, 5 B. & Ad. 313, 340. The property may well be in the buyer, though the right of possession, or lien for the price, is in the seller. There could in fact be no such lien without a change of ownership. No man can be said to have a lien, in the proper sense of the term, upon his own property, and the seller's lien can only be upon the buyer's property. It has often been decided that assumpsit for the price of goods bargained and sold can be maintained where the goods have been selected by the buyer, and set apart for him by the seller, though not actually delivered to him, and where nothing remains to be done except that the buyer should pay the agreed price. In such a state of things the property vests in him, and with it the risk of any accident that may happen to the goods in the mean time. Noy's Maxims, 89. 2 Kent Com. (12th ed.) 492. *Bloxam* v. *Sanders*, 4 B. & C. 941. *Tarling* v. *Baxter*, 6 B. & C. 360. *Hinde* v. *Whitehouse*, 7 East, 571. *Macomber* v. *Parker*, 13 Pick. 175, 183. *Morse* v. *Sherman*, 106 Mass. 430.

In the present case, nothing remained to be done on the part of the plaintiff. The price had been agreed upon; the specific chattel had been finished according to order, set apart and appropriated for the defendant, and marked with his initials. The plaintiff had not undertaken to deliver it elsewhere than on his own premises. He gave notice that it was finished, and presented his bill to the defendant, who promised to pay it soon. He had previously requested that the carriage should not be sold, a request which substantially is equivalent to asking the plaintiff to keep it for him when finished. Without contending that these circumstances amount to a delivery and acceptance within the statute of frauds, the plaintiff may well claim that enough has been done, in a case not within that statute, to vest the general ownership in the defendant, and to cast upon him the risk of loss by fire, while the chattel remained in the plaintiff's possession.

According to the terms of the reservation, the verdict must be set aside, and                *Judgment entered for the plaintiff.*