In Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255, it was held:

"But whatever view may have been taken of the right of the defendants to treat the contract for the purposes of its performance as at an end, and to act upon that assumption when they received the plaintiff's letter, they disposed of that question by their letter to him. By this it appeared that the defendants elected to keep the contract in force for the purposes for which it was made. This operated alike upon the rights of both parties, and the plaintiff was justified in so understanding it. In that view the contract was kept alive until the time arrived for performance, and the obligations of the defendants no less than those of the plaintiff for that purpose remained effectual."

In the case at bar the plaintiff distinctly notified the defendant that he refused to accept his repudiation of the contract and would hold him to his performance and would be ready himself to perform, thereby nullifying the alleged anticipatory breach. His own promise to pay one-half of the purchase price was to be performed concurrently with the alleged promise of the defendant to pay his half of the purchase price, and, in order to recover damages for defendant's breach, the plaintiff was required to show strict performance upon his part. This he failed to do. The instruction, therefore, to the jury, of the law of the case was error, even assuming upon the facts that the plaintiff had established the contract upon which he sued.

The judgment and order appealed from should therefore be reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(139 App. Div. 530.)

### JUILLARD et al. v. TROKIE et al.

(Supreme Court, Appellate Division, First Department. July 7, 1910.)

1. FRAUDS, STATUTE OF (§ 118*)—MEMORANDUM OF SALE.

There is not a sufficient memorandum of sale signed by defendants, the parties sought to be bound, to satisfy the statute of frauds, where plaintiffs sent them a memorandum of sale, and they replied objecting to one of its terms, as not according to agreement, and requesting change thereof, and the only other writing was a subsequent letter of plaintiffs, never assented to in writing by defendants, varying another term of the contract, and doing this, according to the letter, pursuant to "writer's conversation with you to-day."

[Ed. Note.—For other cases, see Frauds, Statute of, Dec. Dig. § 118.*]

2. FRAUDS, STATUTE OF (§ 83*)—MEMORANDUM—CONTRACT TO SELL OR MANUFACTURE.

Plaintiffs not being manufacturers, their contract is not one to manufacture, but one to sell cloth, as regards the necessity of a memorandum of the contract signed by the buyers, notwithstanding a provision that, "if the production of the mill for whose account above contract is sold be curtailed by strikes * * * or by any unavoidable accident, the deliveries shall be proportioned to the production."

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 147–153; Dec. Dig. § 83.*]

Appeal from Trial Term, New York County.

Action by Augustus D. Juillard and others against Nathan Trokie and others. From a judgment dismissing the complaint at the close of their case, plaintiffs appeal. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, LAUGHLIN, and DOWLING, JJ.

E. W. Tyler, for appellants.
J. Solon Einsohn, for respondents.

McLAUGHLIN, J. The complaint alleges: That on the 27th of of August, 1907, the plaintiffs and the defendants entered into a contract by which the former agreed to sell, and the latter to buy, 100,000 yards of sheeting at 4¾ cents a yard; deliveries to be made commencing April, 1908, 10,000 yards every two weeks, and terms to be net 10 days. That at the request of defendants the contract was thereafter modified by making the terms 10 days from the end of each month, and the deliveries 15,000 yards on the 15th day of each month commencing April 15, 1908. That the defendants have refused to accept the goods contracted for, to plaintiffs' damage, as shown by the bill of particulars, in the sum of $1,662. The defendants denied the making of the contract and set up as a defense the statute of frauds. Upon the trial the court held that no contract valid under the statute had been proven and dismissed the complaint at the close of plaintiffs' case. Judgment was entered accordingly, from which plaintiffs appeal.

I am of the opinion that the evidence introduced at the trial did not establish a valid contract. The evidence consisted, first, of a memorandum dated the 27th of August, 1907, which the plaintiffs sent to the defendants, setting forth the terms of the sale as alleged in the complaint. To this the defendants replied, in writing, on the 3d of September as follows:

"Your copy of order confirming order left with you by our Mr. Trokie, who is at present out of town, received. We wrote him in regards to your terms on order which he claims an error. Terms made were ten days E. O. M. (i. e., end of month). Please change same and return to, Yours respectfully, Excelsior Pad Co. (which was the defendants' firm name)."

On the 19th of September following, the plaintiffs wrote the defendants, saying:

"As per writer's conversation with you to-day, we agree to make shipment of 15,000 yards 6.00 sheeting, on or about the 15th of each month, beginning April 15th, 1908, with terms net ten days, from the end of the month on your contract No. 6091 (which was the number of the memorandum first sent)."

These are the letters upon which, as appears from the bill of particulars, the plaintiffs rely as written evidence of the contract. It further appears that on the 23d of December, 1907, defendants wrote plaintiffs that:

"In accordance with the conversation our Mr. Trokie had with your Mr. Kelly last week we herewith consider the optional order placed with you canceled."

The plaintiffs refused to recognize the contract canceled, and after further correspondence, on the 4th of April, 1908, sent the defendants an invoice for 15,531½ yards of the sheeting at 4¾ cents a yard,

"terms net ten days April 15th." This the defendants returned, stating:

"We canceled this order last December."

There is nothing in any of the writings or correspondence which shows that the minds of the parties ever met as to the terms of a contract. Indeed, the only writing signed by the defendants—the persons to be charged—which in any way could be tortured into an agreement on their part, is the letter of September 3d. That states:

"Your copy of order confirming order left with you by our Mr. Trokie, who is at present out of town, received. We wrote him in regards to your terms on order which he claims an error. Terms made were ten days, E. O. M. Please change same and return."

Instead of this being an admission that there was a contract, it is a repudiation of one on the terms sent, and requesting a change. The change was never made, but a different proposition submitted. The letter submitting the second proposition was written some two weeks thereafter, and states:

"As per writer's conversation with you to-day we agree to make shipment of 15,000 yards 6.00 sheeting, on or about the 15th of each month," etc.

This was a material alteration of the original agreement, and it was not signed or acknowledged in any way by the defendants.

In Leach v. Weil, 129 App. Div. 688, 114 N. Y. Supp. 234, it was said:

"It is unnecessary to cite authority for the familiar and well-settled rule that the note or memorandum required by the statute of frauds must contain all of the terms of the contract and cannot be eked out by oral proof.' * * * It does not suffice that the writing evidence a contract; it must embody the terms of the contract actually made. The writing relied upon in this case does not embody all of the terms of the contract actually made; hence such contract was void for not being evidenced as the statute requires."

This statement is quite applicable to the present case. The only writing signed by the defendants, admitting that it evidences a contract, does not show what were the terms of the contract upon which this action was brought. It will be remembered, in the original memorandum which the plaintiffs sent, the sheeting was to be delivered 10,000 yards every two weeks, commencing in April, 1908, "but subject to change before 15th proximo, as to weekly quantity." The plaintiffs contend that the parties agreed orally to change the weekly quantities to 15,000 yards on the 15th of each month, as set forth in their letter of September 19th; plaintiffs also agreeing to the change in time of payment. But, as appears from that letter, this change was not made "before 15th proximo," i. e., the 15th of September, but "as per writer's conversation with you to-day." Then, too, this letter was never assented to in writing by the defendants, and when it is considered in connection with the two letters which had preceded it, it is impossible to say that the minds of the parties ever met, or, if so, what the terms of the contract were.

It is also urged that the contract was not within the statute of frauds, since it was for the sale of goods to be manufactured. This suggestion is based upon a statement in the original memorandum that:

"If the production of the mill for whose account above contract is sold be curtailed by strikes * * * or by any unavoidable accident, the deliveries shall be proportioned to the production."

This statement was of no importance because the plaintiffs were not manufacturers. It made no difference to the defendants where the plaintiffs procured the sheeting, whether they had the same on hand when the contract was made, or thereafter obtained it. It was not a contract to manufacture.

I am of the opinion that the judgment is right, and should be affirmed, with costs. All concur.