MORSE et al. v. CANASWACTA KNITTING CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1912.)

1. APPEAL AND ERROR (§ 1041*)—HARMLESS ERROR—AMENDMENT ON THE TRIAL—PLEADINGS.

An allegation that defendant agreed to accept and pay plaintiffs for making a belt, to pay $334.80, less 50 per cent. and 10 per cent. "which was the value" and agreed price of same, and defendant promised to pay for cement, etc., fully justified a recovery either upon a contract or upon a quantum meruit, and the allowing of an amendment on the trial stating the value of services rendered, if error, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4089–4105; Dec. Dig. § 1041.*]

2. FRAUDS, STATUTE OF (§ 83*)—CONTRACTS FOR WORK AND LABOR—SALES.

The statute of frauds does not apply to a contract for a belt to be manufactured in a special manner, even though a third party is to manufacture the belt, where the vendor has to pay for such manufacture.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 147–153; Dec. Dig. § 83.*]

3. SALES (§ 81*)—DELIVERY—RESCISSION.

Where one put in an order for a belt, saying that he desired it by a certain day, and the other party said he would try to have it ready on that date, but did not have it ready until the day following, the same being within a reasonable time after the order, the right to rescission did not exist.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 217–223; Dec. Dig. § 81.*]

Houghton, J., dissenting.

Appeal from Special Term, Broome County.

Action by Ellis W. Morse and another against the Canaswacta Knitting Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Fuller & Truesdell, of Sherburne, for appellant.

McManus & Buckley, of Binghamton, for respondents.

SMITH, P. J. This is an action brought to recover the sum of $151.47 for work and materials furnished by plaintiffs to defendant in making and cementing a certain waterproof belt according to certain specifications furnished by defendant to plaintiffs. The complaint in paragraph 4 alleged:

"That defendant agreed to accept and pay plaintiffs for said belt. To pay $334.80, less 50 per cent. and 10 per cent., thirty days from time of invoice, which was the value and agreed price of same, and defendant also promised and agreed to pay for necessary cement used in making a joint in said belt, the value of which is $1.13, amounting in all to the sum of $151.47."

[1] Upon the trial there was a question raised as to whether the plaintiffs having specified a definite contract to pay could recover on a quantum meruit. The trial judge allowed an amendment on the trial, stating the value of services rendered. It is complained of upon this

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.appeal that that amendment could not be allowed upon the trial. If we assume for the argument that the amendment was improperly allowed on the trial, I do not see that any harm has come because the amendment was wholly unnecessary, as that part of the complaint above quoted fully justified a recovery either upon a contract or upon a quantum meruit.

[2] It is further contended by the defendant that this contract was void by the statute of frauds. The contract was to manufacture and sell. The contention is that the statute nevertheless applies, because the belt was to be manufactured by another than the plaintiffs, and not by the plaintiffs themselves. This contention is not without support in the authorities. It has been held in the common pleas in the cases cited by Mr. Justice Houghton. Those are based upon a dictum found in Parsons v. Loucks, 48 N. Y. 20, 8 Am. Rep. 517. That dictum cites as its authority Parsons on Contracts, p. 52. In Parsons on Contracts, one of the classes of cases to which the statute is held not to apply, is "to buy hereafter an article to be manufactured by the seller." It is quite apparent, however, that that expression was not used in contradistinction to an article to be manufactured by another than the seller. Similar expressions are found in some other cases, which I believe are made the foundation of the distinction, which was never intended by earlier writers, if the agreement be to manufacture the article according to certain specifications, so that the manufactured article is not one that can be readily held in stock and sold to others. In none of these cases where this rule has been stated has the contract been one to manufacture articles of a peculiar mould. I am unable to see any reason for a distinction when that article is manufactured by an employé in the shop of the seller, or an employé outside his shop. Clearly the seller is bound to pay for the article which is thus manufactured for the vendee. The article which he is thus required to pay for is of little or no value in his hands because made of peculiar moulds for a special purpose. If there be any reason for excluding from the effect of the statute a contract for manufacturing an article by the seller himself, the same reason would seem to apply to a contract for the manufacturing in a special mould where the seller has procured some third party to do the work for him. The rule is well stated in the case of Edwards v. Grand Trunk Railway Co., 48 Me. 380. An extract from the opinion of the court follows:

"The fact that an article contracted for does not exist at the time of the contract, but is to be made or manufactured, will not necessarily take the case out of the statute. It must also appear that the particular person who is to manufacture it, *or the mode and manner, or materials* enter into and make part of the contract."

It has been further held in Abbott v. Gilchrist et al., 38 Me. 260:

"An agreement to procure and deliver at a time and place fixed a vessel frame, to be hewn and prepared according to certain mould, is binding, without being in writing."

.: In Forsyth & Ingram v. Mann, 68 Vt. 116, 34 Atl. 481, 32 L. R. A. 788, it was held that a contract to manufacture a monument is not within the statute of frauds, although there is no agreement to bestow

personal skill and labor upon it or anything to prevent the contractor from purchasing it elsewhere in whole or in part, instead of manufacturing it from his own quarry and in his own shop. The opinion in part reads:

"But it is said that as the defendants were not bound to bestow their personal skill and labor upon the monument, but were at liberty to get others to make it for them. It is a contract of sale, and not for work and labor. But that makes no difference, as was said in Bird v. Muhlinbrink, 1 Rich. 199, 44 Am. Dec. 247. It is not necessary that personal skill and labor should be stipulated for in order to make a contract one for manufacture. It is sufficient if the work and labor requisite to such a contract are to be performed by the contractor, or by his procurement and at his expense. The latter would be work and labor done by him, in the eye of the law, and could be declared for as such. We hold, therefore, that the contract in question is not within the statute."

The judge writing the opinion had theretofore discussed the question of a contract to manufacture an article ordinarily merchantable and an article according to a special pattern, which would be fit only for the party ordering the same. A contract to manufacture the latter article was declared not to be within the statute of frauds, and the part of the opinion quoted followed the discussion upon that question. In Bird v. Muhlinbrink, supra, certain articles of military uniform had been ordered to be manufactured, but not by the vendor himself, and the question here at issue was thus discussed:

"If the plaintiff had been a maker of such articles, and had made such sashes as these for the defendant, the contract would have been regarded as one for work and labor, as well as for goods to be delivered, as much so as if a tailor had made a new-fangled dress for a peculiar individual, and such as would perhaps suit no one but the person speaking for it. The fact that the sashes were to be made in Germany, by the procurement of plaintiff, instead of being made by the plaintiff himself, can or ought to make no difference in the case."

In 19 Ann. Cas. p. 1298, is an elaborate note upon the distinction attempted in this case. The New York rule is stated as held in the cases cited in the dissenting opinion, that, where the sale is made by an agent of goods to be manufactured by his principal, the statute nevertheless applies. The note continues:

"This rule, however, is limited by the rule that the article manufactured must be such as is vendible in the general market. Although the article may be procured from a third person, yet, if it is not a marketable commodity, the contract should be held to be outside of the operation of the statute."

To this the cases of Forsyth v. Mann and Bird v. Muhlinbrink are cited. It may be well here to note the fact that these plaintiffs were not acting as agents for these manufacturers. They were independent vendors, and were procuring the belt to be manufactured outside of their shop, instead of by their immediate employés. The distinction between articles to be manufactured by the vendor himself or to be by him procured to be manufactured by another party should only be held upon imperative authority because of the hardship to the vendor, who is himself required to pay for the articles thus manufactured, and to whom, if they are of special manufacture and not articles of general merchandise, they are useless.

[3] Upon December 30th the order was received for the manufacturing of this belt. The order was at once sent to the manufacturers. Upon January 3d the plaintiff received notice from the manufacturers that it was unwise to make an endless belt unless the defendant had some expert who could put it together at the factory where it was to be used. This was communicated to the defendant, who nevertheless desired the belt to be made in this way, and then stated that they desired the belt by January 6th. The plaintiff stated that he would inform the manufacturer to that effect, and, if possible, have the belt delivered by that time. The belt was not finished and shipped until January 7th. Upon that day a letter was received by the plaintiff from the defendant canceling the order. The letter had been written upon January 6th. The court found that the belt was manufactured within a reasonable time after giving of the order, and that the order was not canceled until after the belt was manufactured, and that, therefore, the defendant was required to take the belt and pay for the same. The defendant refused to take the belt from the express company after it reached the defendant's express office, and the belt is now in the express office awaiting the determination of this action. The specifications were not finally delivered until January 3d. The plaintiff was not told that the order would be canceled unless the belt was delivered by January 6th. He was justified in proceeding to procure the same to be manufactured, and, as the belt was practically finished and had been shipped, the defendant was not authorized to rescind the contract. If the defendant wished to rescind the contract, he should at least have notified the plaintiff to that effect on January 3d, when the conversation was held as to the particular kind of belt, whether the belt should be laced or should be made an endless belt and cemented together. I recommend that the judgment be affirmed, with costs.

Judgment affirmed, with costs. All concur, except HOUGHTON, J., dissenting in opinion. LYON, J., not sitting.

HOUGHTON, J. (dissenting). Although the defendant was wholly unjustified in refusing to accept delivery, nevertheless it seems to me the judgment for the plaintiffs cannot be sustained.

The action is brought to recover the market value of belting made especially for the defendant in compliance with its order. Confessedly the belting was not manufactured by the plaintiffs who were not engaged in the business of manufacturing, but by another manufacturing concern not disclosed to defendant, to which they gave orders for the supplying and making of such belting as they might obtain orders and purchasers for. If the plaintiffs themselves had been the manufacturers, the order which the defendant gave for the making of the belt in controversy would have been a simple order for work and labor, because the belt was not in existence, and of necessity had to be made especially to fit the defendant's machinery. Notwithstanding the fact that the belt had to be especially made, the plaintiffs not being the manufacturers, the transaction had between them and the defendant was one of simple bargain and sale of personal property

of more than $50 in value, and therefore came within the provisions of the statute of frauds requiring a note or memorandum in writing. Personal Property Law (Consol. Laws 1909, c. 41) § 31. Contracts for the delivery of goods to be manufactured are contracts for the sale of goods, wares, and merchandise within the statute of frauds, unless the goods are to be manufactured by the vendors themselves. Millar v. Fitzgibbons, 9 Daly, 505; Joy v. Schloss, 12 Daly, 533; Courtright v. Stewart, 19 Barb. 455; Juilliard v. Trokie, 139 App. Div. 530, 124 N. Y. Supp. 121; Pitkin v. Noyes, 48 N. H. 294, 97 Am. Dec. 615, 2 Am. Rep. 218; 3 Parsons on Contracts (7th Ed.) 60. The principle upon which a contract to sell an article not in existence and which is to be manufactured by the seller is considered not to come within the statute of frauds is that the parties have so blended the contract of sale with one for work and labor that it no longer remains one of sale only to which alone the statute applies. This element of work and labor is lacking where one simply agrees to furnish and sell an article which he procures to be manufactured by whomsoever he chooses and the transaction amounts only to a simple sale.

The plaintiffs cannot recover, therefore, unless the signed letter which the defendant wrote to them on the 29th day of December, 1909, is a sufficient memorandum to satisfy the statute of frauds. So far as material, that letter reads as follows:

"Referring to our order with you for belting, would say you will please make and send to us one belt, distance between centers 39 feet 6 inches. Pulley diameters 28 and 30 inches."

Immediately on receipt of this letter it was observed by the plaintiffs that the width of the belt was not mentioned. In addition to this omission no price is stated.

While the memorandum required by the statute of frauds may be quite informal, and may be composed of several written communications relating to each other, signed by the party to be charged, all the essential parts of the agreement must be contained in the writings, and they cannot be supplied by oral evidence. Stone v. Browning, 68 N. Y. 598; Waxelbaum v. Schloss, 131 App. Div. 826, 116 N. Y. Supp. 42. The price to be paid or some stipulated means of fixing it is an essential element of such a memorandum. Lambert v. Hays, 136 App. Div. 574, 121 N. Y. Supp. 80; United Press v. New York Press Co., 164 N. Y. 406, 58 N. E. 527, 53 L. R. A. 288; Inman v. Burt Co., 124 App. Div. 73, 108 N. Y. Supp. 210.

The defendant claims not to have understood that the plaintiffs were to manufacture the belt, or that it was to be manufactured by any particular concern, or at all, except to be spliced together at the required length. If it was to be manufactured by plaintiffs themselves, the defendant would have been obliged to pay therefor, irrespective of any written agreement, because its order would have been a direction to perform work and labor, and not within the statute. Whatever defendant may have understood as to the manufacture, it appeared in the trial that the transaction was a mere bargain and sale of personal property of over fifty dollars in value, and it then had the right to

insist that there was no binding contract compelling it to accept delivery, even though proper tender was made. It is true that the record shows that no oral agreement as to price was had, and it might seem that there could properly be read into the memorandum an implied agreement to pay the fair value of the belting. But such doctrine was discussed and repudiated by Judge Gray in United Press v. New York Press Co., supra, wherein he points out that such holding in Hoadley v. M'Laine, 10 Bingh. 482, was not necessary to the decision because the goods were to be fabricated by the vendor.

The other letters written by the defendant do not aid the memorandum above quoted, and those written by the plaintiffs have no bearing because they are not signed by the defendant, the party to be charged.

For these reasons, I think the judgment should be reversed, and, as there is no possibility of the plaintiffs making a different case upon another trial, the complaint should be dismissed, with costs.