EAGLE PAPER BOX COMPANY, Respondent, *v.* GATTI-
McQUADE COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, April, 1917.)

Statute of Frauds — memorandum in writing insufficient to avoid the —
    sales — contracts — evidence — Personal Property Law, § 85(2).

A correspondence consisting of a letter from plaintiff to defendant and received by it, stating that plaintiff had placed an order with defendant's agent for certain goods of specified sizes to be shipped at certain times, and a postal card sent two days later by defendant to plaintiff, acknowledging an order of the previous day but in no way connected with the letter or the order given to the agent, except by oral testimony, is not a sufficient memorandum in writing to avoid the Statute of Frauds.

All the essential parts of an agreement of sale must be contained in the writings between the parties and cannot be supplied by oral testimony.

It clearly appearing that the goods were not to be manufactured by defendant, the contract was not enforcible under section 85(2) of the Personal Property Law which was added thereto by chapter 571 of the Laws of 1911.

Appeal by the defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, in favor of the plaintiff for $1,063.

Smith & Bowman (Harold H. Bowman, of counsel), for appellant.

Arnstein & Levy (Herman Joseph and Charles Goldzier, of counsel), for respondent.

Weeks, J.  This action is brought to recover damages for the failure of defendant to deliver fifty-four tons of chip board under an oral contract made on January 26, 1916, as to which it was claimed written communications were thereafter had.

In addition to a general denial, defendant pleaded the Statute of Frauds as an affirmative defense.

The plaintiff claims that the case does not come within the statute because the goods were not in existence when the contract was made and were to be manufactured especially for the buyer, and were not suitable for sale to others in the ordinary course of the seller's business, and further claims that, even if the case comes within the statute, there was a sufficient note or memorandum in writing of the contract or sale signed by the defendant.

Although there was little, if any, proof that the salesman was authorized to accept the order, and although there was strong evidence that the postal card acknowledging " an order of the 27th inst." referred to an order for other goods and did not have any reference to the order of January twenty-sixth

**510**  EAGLE PAPER BOX CO. *v.* GATTI-MCQUADE CO.

upon which this action is founded, and although the proof to meet the " special order test " may have been of doubtful sufficiency, the determination of the trial court must be considered as resolving these disputed questions of fact in favor of the plaintiff.

In order to support the making of a memorandum in writing the plaintiff relied upon a letter written by it and received by the defendant as follows:

" NEW YORK, *January* 26, 1916.

" GENTLEMEN.— We placed an order with your Mr. Massa, for fifty ton of light color chip; kindly make that fifty-four ton.  The following are the sizes and quantity, of each size, to be made:

| 4 ton | 24 x 35 | No. 60 |
|---|---|---|
| 4 " | 26 x 44 | " 40 |
| 4 " | 26 x 50 | " 35 |
| 2 " | 29 x 41 | " 45 |
| 4 " | 26 x 38 | " 40 |
| 4 " | 26 x 38 | " 40 |
| 4 " | 34 x 46 | " 32 |
| 4 " | 34 x 52 | " 26 |
| 4 " | 34 x 58 | " 23 |
| 4 " | 29 x 46 | " 35 |
| 2 " | 26 x 38 | " 70 |
| 2 " | 26 x 38 | " 60 |
| 2 " | 29 x 44 | " 55 |
| 2 " | 32 x 42 | " 40 |
| 2 " | 32 x 44 | " 50 |
| 2 " | 29 x 42 | " 50 |
| 2 " | 34½ x 43 | " 26 |
| 2 " | 26 x 35 | " 48 |

the above to be light color chip, grain running the long way, board must be stiff and dry, with a rough finish.

" Half of each quantity, and each size of the order must be shipped in at once.  The other half of the order, to be shipped in on February 25th, 1916."

And a postal card, post marked January 28, 1916, 9:30 P. M., sent by defendant to plaintiff as follows:

" HOBOKEN, N. J., 1/27, 1916.

" We acknowledge with thanks your esteemed order of the 27th inst., which will receive our immediate attention."

This postal card is not connected with the contract or letter except by oral testimony.

It is clear that this correspondence does not constitute a sufficient memorandum in writing to avoid the operation of the statute.

All the essential parts of the agreement must be contained in the writings and they cannot be supplied by oral evidence. *Stone* v. *Browning,* 68 N. Y. 598; *Waxelbaum* v. *Schloss,* 131 App. Div. 826. The price to be paid or some stipulated means of fixing it is an essential element of such a memorandum. *Lambert* v. *Hays,* 136 App. Div. 574; *United Press* v. *New York Press Co.,* 164 N. Y. 406; *Inman* v. *Burt Co.,* 124 App. Div. 73.

Whether the Statute of Frauds applies to the contract sued upon must be determined by the language of the present statute which is to be found in section 85 of chapter 571, Laws of 1911, taking effect September 1, 1911, popularly called the Uniform Sales Act, and forming part of the Personal Property Law.

Subdivision 2 of that section reads as follows:

" 2. The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be acutally made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; but if the goods are to be manufactured by the seller especially for the buyer and are

not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.''

The language of this section is identical with the corresponding section in the Uniform Sales Act which has been adopted in many of the states.

In reporting this act, of which he was the draftsman, to the American Bar Association, Professor Williston said, with reference to this provision: '' The first half of subsection (2) is taken from the English Act which has enacted the rule laid down by *Lee* v. *Griffin,* 1 B. & S. 272. Though this rule is the most scientifically exact, and has been so recognized by writers (*e. g.,* Benjamin on Sales, Sec. 103), it has found little support in this country, even in cases decided since *Lee* v. *Griffin.* The qualification here added to the English subsection is intended to reproduce the rule laid down by Shaw, C. J., in *Mixer* v. *Howarth,* 21 Pick. (Mass.) 205, and by Ames, J., in *Goddard* v. *Binney,* 115 Mass. 450. The New York rule is still different, and in other states the line may not always be drawn at exactly the same point. The authorities are collected in Mechen, Sections 304–326, and the conclusion drawn in Section 326 seems justified by the cases and justifies the form of this proposed draft: ' The Massachusetts rule seems likely to be received with favor wherever the courts are not debarred by earlier decisions from adopting it.' ''

Prior to the enactment of the present statute the authorities in this state had held that a contract for the delivery of goods to be manufactured *by* the vendor was a contract for work and labor and not within the statute, but if the goods were to be manufactured *for* the vendor by others the contract was a contract of sale and was within the statute unless the article manufactured was not vendible in the general market.

*Millar* v. *Fitzgibbons,* 9 Daly, 505; *Joy* v. *Schloss,* 12 id. 533; *Courtright* v. *Stewart,* 19 Barb. 455; *Juilliard* v. *Trokie,* 139 App. Div. 530; affd., 203 N. Y. 604.

In *Morse* v. *Canasawacta Knitting Co.,* 154 App. Div. 351, however, it was held by a divided court that in the case of an article manufactured according to certain specifications, so that it could not be readily held in stock and sold to others: " The distinction between articles to be manufactured by the vendor himself or to be by him procured to be manufactured by another party, should only be held upon imperative authority."

As the judgment appealed from in that case was entered July 28, 1911, it cannot be regarded as construing the present statute, in which the distinction is clearly indicated by the use of the words " manufactured *by the seller.*" This removes all ambiguity and leaves no room for doubt, unless all recognized rules for construction are to be disregarded. If it were intended to make the statute inapplicable to a sale of goods not in existence, provided they were manufactured especially for the buyer and were not suitable for sale to others in the ordinary course of the seller's business, without regard to whether they were manufactured *by the seller* or by some other person, the addition of these words would have been not only unnecessary but misleading. That the distinction was clearly in mind when the statute was enacted is shown by the definition of " future goods " to be found in the following section as " goods to be manufactured *or acquired* by the seller after the making of the contract to sell."

As said by Judge Finch in *People ex rel. Freligh* v. *Matsell,* 94 N. Y. 179, at page 183: " In the construction of a statute, effect must be given, if possible, to all the language employed," and as this provision

33

of the statute was beyond question intended to incorporate therein the Massachusetts rule, the authorities of that state are especially illuminating if not controlling.

In *Smalley* v. *Hamblin,* 170 Mass. 380, decided February, 1898, the court said: " In *Goddard* v. *Binney,* 115 Mass. 450, many of our decisions, as well as some of those of England and of New York, are reviewed, but there is no express decision here with reference to the effect of an understanding that the articles are not to be manufactured by the vendor, but are to be procured by him of some other person who manufactures and sells them, and are to be delivered by the vendor to the purchaser for an agreed price as completed articles of merchandise. Where this fact has appeared, it usually has been considered that the transaction is a sale of merchandise. We think that it must be so held in this case. *Edwards* v. *Grand Trunk Railway,* 48 Maine, 379. *Pitkin* v. *Noyes,* 48 N. H. 294. *Prescott* v. *Locke,* 51 N. H. 94. See *Donaher* v. *Boston,* 126 Mass. 309; *Bacon* v. *Parker,* 137 Mass. 309; *Tracy* v. *Wetherell,* 165 Mass. 113."

The only reported decisions in this state in cases arising since the amendment of 1911 are *Davis* v. *Blanchard,* 138 N. Y. Supp. 202, and *Schneider* v. *Lezinsky,* 162 id. 769, in both of which the goods were to be manufactured by the seller. In the case of *Goldowitz* v. *Kupfer & Co.,* 80 Misc. Rep. 487, an examination of the record shows that the contract sued upon was made in 1910 and no question was raised as to whether the goods were to be manufactured by the seller or another.

In the instant case it is clear that the goods were not to be manufactured by the defendant.

No proof was offered that the plaintiff expected or understood that the goods were to be the product of

the personal skill and labor of the defendant or its
employees or that it made any difference where the
defendant procured the board or even whether it was
then on hand, and in fact the letter of plaintiff
required one-half of the order to be shipped in *at once,*
and it is uncontradicted that the defendant owned no
paper mill and that it attempted to have the goods
manufactured by a corporation in which the defendant
was not interested except as a creditor.

It follows, therefore, that the judgment must be
reversed, with thirty dollars costs, and complaint dis-
missed upon the merits, with costs in the lower court.

BIJUR and HENDRICK, JJ., concur.

Judgment reversed, with costs.