Walter R. Hart, J.
The action was brought to recover $544.87 for goods allegedly sold and delivered by the plaintiff to the defendant. The defendant interposed a general denial and a defense of the Statute of Frauds.
It appeared at the trial that the defendant ordered from the plaintiff a number of window frames and sections of specific sizes and dimensions to be especially made up for the defendant’s use on an alteration job. The order was not in writing. The plaintiff did not itself manufacture the window frames. They were “made up ” at the plaintiff’s request by someone else. Upon the defendant’s refusal to accept and pay for the goods, this suit was instituted. The defendant’s position at the trial was that the contract, being oral, was unenforcible under section 85 of the Personal Property Law, subdivision 1 of which provides that:
“ § 85. Statute of frauds. 1. A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.”
The court’s decision was that, inasmuch as “ the goods were especially manufactured or made up in certain dimensions and not suitable in the ordinary course, except for the job contemplated by the defendant buyer, ’ ’ the Statute of Frauds was not available as a defense to the plaintiff’s action. The court granted judgment to the plaintiff in the amount sued for, *987 obviously basing its decision on subdivision 2 of section 85 of the Personal Property Law which in part provides that: “ If the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller’s business, the provisions of this section shall not apply.”
The defendant’s principal argument, presented in an excellent brief, is that the exception of the so-called “ special order ” rule in the foregoing subdivision has no application here inasmuch as plaintiff admittedly did not manufacture the goods in suit, but had them made up by someone else. Moreover, argues the defendant, even if that rule here applied, it is not of any benefit to the plaintiff inasmuch as it failed to show that the goods, the window frames, were not suitable for sale to others in the ordinary course of its business.
Prior to the adoption of the Uniform Sales Act in New York, of which section 85 of the Personal Property Law is a part, there was no statutory exemption from the Statute of Frauds in instances where the goods were manufactured especially for the buyer. There was, however, decisional law to that effect based on the principle that transactions for goods to be especially made up were in the nature of contracts for work, labor and services rather than for the sale of merchandise (Indiana Limestone Co. v. Bernstein Cut Stone Co., 263 App. Div. 312). The question then arose in Morse v. Canasawacta Knitting Co. (154 App. Div. 351) whether the same rule applied, that is, whether a transaction was in reality not a sale but a contract for work and labor, when the seller does not himself manufacture the goods, but has them made up by someone else. The trial court held that the rule was the same. The judgment in the case was entered in July, 1911 in the Supreme Court, Broome County. On appeal to the Appellate Division, Third Department, the judgment was affirmed (in Dec., 1912). Writing for the majority of the court, Smith, J., said (pp. 353-354 ): “ I am unable to see any reason for a distinction when that article is manufactured by an employee in the shop of the seller, or an employee outside his shop. Clearly the seller is bound to pay for the article which is thus manufactured for the vendee. The article which he is thus required to pay for is of little or no value in his hands because made of peculiar moulds for a special purpose. If there be any reason for excluding from the effect of the statute, a contract for manufacturing an article by the seller himself, the same reason would seem to apply to a contract for the manufacturing in a *988 special mould where the seller has procured some third party to do the work for him.”
There was a dissent by Mr. Justice Houghton who argued that (p. 357): “The principle upon which a contract to sell an article not in existence, and which is to be manufactured by the seller is considered not to come within the Statute of Frauds, is that the parties have so blended the contract of sale with one for work and labor that it no longer remains one of sale only to which alone the statute applies. This element of work and labor is lacking where one simply agrees to furnish and sell an article which he procures to be manufactured by whomsoever he chooses and the transaction amounts only to a simple sale.” The case went to the Court of Appeals where it was affirmed without opinion (214 N. Y. 695 [April, 1915]).
In April, 1917 the Appellate Term, First Department, had the same question before it in Eagle Paper Box Co. v. Gatti-McQuade Co. (99 Misc. 508). This was, of course, after the enactment of section 85 and its subdivisions in their present form. The court, after pointing out that the Uniform Sales Act took effect in New York in September, 1911, about a month after the entry of the judgment in the Morse case (supra), stated that the Morse case could not be regarded as construing the plain language of subdivision 2 of section 85 of the Personal Property Law; that, whatever might have been the rule before the enactment of that subdivision, the inclusion of the words ‘ ‘ by the seller ’ ’ after the word 1 ‘ manufactured ’ ’ in subdivision 2 removed all ambiguity and left no room for doubt, under recognized rules of construing statutes, that what was intended was to limit the exemption afforded by that subdivision only to instances where the goods were manufactured by the seller himself, and not by anyone else for him. The court’s decision was that, inasmuch as the evidence in that case showed that the goods were not manufactured by the seller but by some third party for him, the transaction was a sale and the contract, being oral, was unenforcible under subdivision 2 of section 85 of the Personal Property Law. On appeal, the Appellate Division affirmed without opinion (181 App. Div. 924).
The Appellate Term, First Department, in a recent case indicated its adherence to the rule laid down in the Eagle Paper Box Co. case (supra) — Rosette Pennington, Inc. v. Hayes (10 Misc 2d 999 [Oct. 31, 1957]).
In this department, however, Mr. Justice Stoddakt, sitting in Special Term of the Supreme Court, Nassau County, followed the rule laid down in the Morse case (supra). The case was *989 Greenhill v. La Licata (205 Misc. 672 [March 30, 1954]). The action was to foreclose a mechanic’s lien. The evidence disclosed that the plaintiff, pursuant to an oral agreement with the defendant, manufactured certain window sash trim and door frames for use upon the defendants’ property. These articles were made in accordance with specifications required by the defendant’s plans, and were not suitable for sale to others in the ordinary course of the plaintiff’s business. The defendant refused to accept delivery of the goods, and, when sued, urged the Statute of Frauds as a defense inasmuch as the agreement was oral and involved the sale of goods valued at more than $50. The defendant contended that the exception in subdivision 2 of section 85 of the Personal Property Law was unavailable to the plaintiff inasmuch as the latter did not manufacture the articles himself but had a third party make them up for him. Mr. Justice Stoddabt ruled in favor of the plaintiff upon the authority of the Morse case (supra) quoting the language from the prevailing opinion in that case which I have hereinbefore set forth.
In the present case we are called upon to decide whether to adhere to the rule as laid down in the Morse case (supra) which, as stated, was decided before the enactment of subdivision 2 of section 85 of the Personal Property Law, or whether to follow the rule enunciated in the Eagle Paper Box Co. case (supra). In this connection it is well to bear in mind that the Morse case was affirmed by the Court of Appeals, without opinion, and the Eagle Paper Box Go. case went no higher than the Appellate Division where it likewise was affirmed without opinion.
It is my considered opinion that in the Eagle Paper Box Co. case the court gave undue significance to the words “by the seller ” which follow the word “manufactured” in subdivision 2 of section 85. The emphasis I think should be placed upon the words ‘1 especially for the buyer ’ ’. I think the reasoning in the Morse case was not rendered less valid by the subsequent adoption of subdivision 2 of section 85 of the Personal Property Law. Indeed, the development of modern business practices adds force and validity to that reasoning. The principal ground for the decision in the Eagle Paper Box Go. case is that the use of the words ‘ ‘ by the seller ’ ’ in subdivision 2 must be given literal effect, otherwise, said the court “ the addition of these words would have been not only unnecessary but misleading.” I do not quite agree with this reasoning. It seems to me that even if the words “ by the seller ” had not been inserted in that subdivision they would be “ understood ”. *990 Of course there would he no room for doubt if the section provided that the goods were to be manufactured ‘ ‘ by the seller himself ” or words to that effect. But it does not so provide. In the circumstances, I think it may be argued, no less logically than in the Eagle Paper Box Co. case, that by omitting the word “ himself ” the Legislature intended that the exception in that section should apply if the seller has someone else make up the goods for him. Certainly he still remains the manufacturer, the producer of the goods, as we today understand that term. I agree that, as is stated in the Eagle Paper Box Go. case, in the construction of a statute, effect must be given, if possible, to all the language employed. But this does not necessarily fortify the court’s conclusion in that case that by using the words ‘1 by the seller ’ ’ the Legislature intended to adopt the ‘ ‘ Massachusetts rule ’ ’ which limited the exception of the “ special order ” rule to instances where the manufacturer himself produced the goods. I think it can be argued with equal if not greater force that the Legislature intended to codify the New York rule, as expressed in the Morse case, when it adopted the section, shortly after the entry of the judgment in that case. (It is interesting to note in this connection that the Appellate Division affirmance of the Morse case and the subsequent affirmance without opinion by the Court of Appeals took place long after the adoption of subdivision 2.)
It might be well to note that there is no unanimity on the question in other jurisdictions. In Illinois the rule would appear to be the same as in the Morse case (supra). (See Henry J. Handelsman, Jr. Inc. v. S. E. Schulman Co., 319 Ill. App. 479 [1943].)
The defendant’s contention that there was no showing in the present case that the window frames were not suitable for sale to others in the ordinary course of plaintiff’s business is untenable inasmuch as it overlooks the principle that findings of fact may be based not only on direct evidence but also on inferences reasonably flowing therefrom. Here, the trier of the facts expressly found that the window frames were not suitable for sale to others in.the ordinary course of plaintiff’s business. The evidence amply justified such a finding. The record shows that the window frames were of special measurements, presumably suitable only for the contract job the defendant ordered them for. There is not a scintilla of evidence in the record that the plaintiff’s usual business is selling window frames or that the window frames in suit could possibly be sold to others. The only fair inference, therefore, is the one indulged in by the trial court. In the cases relied on by the defendant there *991 was either no basis for such an inference, or the evidence actually negated it.
The judgment appealed from should be affirmed, with $25 costs to the plaintiff.
Petie and Brows*, JJ., concur.
Judgment affirmed, etc.