[No. 38489.    Department One.    July 14, 1966.]

NATIONWIDE PAPERS, INC., *Respondent,* v. NORTHWEST EGG
SALES, INC., *Appellant.*＊

*Wright, Wendells, Froelich & Power* and *Layton A. Power,*
for appellant.

*Howe, Davis, Reise & Jones* and *Rex M. Walker,* for re-
spondent.

HUNTER, J.—This appeal is based upon an agreed state-
ment of facts and presents a single issue, concerning the ap-
plicability of the statute of frauds (RCW 63.04.050) to the

＊Reported in 416 P.2d 687.

following transaction between plaintiff (respondent), Nationwide Papers, Inc., doing business as Carpenter Paper Company, and defendant (appellant), Northwest Egg Sales, Inc.

Defendant is a wholesale distributor of eggs and other food products. In November, 1963, defendant orally ordered 250,000 egg cartons from plaintiff, a wholesale distributor of paper products. Defendant instructed plaintiff to print defendant's proprietary design on the cartons.

Plaintiff in turn, for its own account, ordered the manufacture of the cartons by its jobber, Fibreboard Paper Products Corporation. There was no relation between plaintiff and Fibreboard other than that of customer-supplier. Defendant was aware of the relationship, having previously ordered similar egg cartons from plaintiff, who had had Fibreboard manufacture them.

While the manufacturing was in process, defendant canceled its order via telephone, and plaintiff immediately notified its jobber to cease processing plaintiff's order. The cartons had already been printed with defendant's proprietary design. Plaintiff was billed $5,026, which amount represented the jobber's expenses, less the salvage value of the cartons. Plaintiff's loss of profit by reason of the defendant's cancellation of its order was $677.34.

Prior to trial of this cause, depositions taken by both parties revealed that there were no disputed material issues of fact, so both parties moved for summary judgment pursuant to Rule of Pleading, Practice and Procedure 56, RCW vol. 0. The trial court heard arguments on both motions and entered an order denying defendant's motion and granting plaintiff's motion for summary judgment, awarding plaintiff damages of $5,703.34, together with costs and interest. Defendant appeals.

Defendant's contention in the trial court and before this court is that recovery by plaintiff is barred by RCW 63.04-.050, which codified the statute of frauds embodied in § 4 of the Uniform Sales Act. The trial court based its order upon its opinion that the statute of frauds did not bar plaintiff's claim because of the "special order" exception set

forth in RCW 63.04.050 (2). The statute reads as follows:

(1) A contract to sell or a sale of any goods or choses in action exceeding the value of fifty dollars shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf.

(2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery; *but if the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business, the provisions of this section shall not apply.* (Italics ours.)

It is admitted that none of the conditions of subsection (1) of the statute have been met. The sole issue is whether manufacture of the goods by a third party at the seller's expense prevents application of the exception contained in subsection (2) of the statute. The question is one of first impression in this state.

Defendant first argues that the Uniform Sales Act, from which our statute is taken, was intended to reproduce the Massachusetts rule, which provided that oral contracts for the sale of goods not yet in existence were within the statute of frauds unless the goods were to be manufactured by the seller for the buyer's special order and not for the general market.

Defendant points out that the commissioners' note to § 4 of the Uniform Sales Act states that subsection (2) was intended to reproduce the rule set forth in *Mixer v. Howarth,* 21 Pick. (Mass.) 205, 32 Am. Dec. 256 (1838) and *Goddard v. Binney,* 115 Mass. 450, 15 Am. Rep. 112 (1874). However, the two cited cases did not involve manufacture of the goods by a third party. These cases furnished the basis for the

so-called special order exception to the statute of frauds, but they did not create the refinement that the seller alone must be the manufacturer of the goods. This refinement did not exist in the Massachusetts cases prior to the case of *Smalley v. Hamblin,* 170 Mass. 380, 49 N.E. 626 (1898), cited by plaintiff. In that case the manufacturer was a third party and the Massachusetts court held the exception did not apply. However, the commissioners' note did not refer to this latter case. At the least, the failure to include the *Smalley* case would seem to indicate a desire on the part of the commissioners to remain neutral in regard to the refinement added by the *Smalley* case. It is therefore not clear that the history of § 4 of the Sales Act, RCW 63.04.050, requires the construction for which defendant contends.

Defendant argues that the rules of statutory construction nevertheless require such an interpretation of the statutory language; that each word and phrase of a statute must be given meaning and effect; that a statute must be construed, if possible, so that no clause, sentence or word shall be superfluous, void or insignificant. Defendant relies upon *H. W. Myers & Son, Inc. v. Felopulos,* 116 Vt. 364, 76 A.2d 552, 25 A.L.R.2d 665 (1950); *Atlas Shoe Co. v. Rosenthal,* 242 Mass. 15, 136 N.E. 107 (1922); *Eagle Paper Box Co. v. Gatti-McQuade Co.,* 99 Misc. 508, 164 N.Y.S. 201 (1917). These cases hold that the words "manufactured by the seller" must be literally construed.

The reasoning of these cases has been severely criticized by Professor Corbin. In commenting upon the *Myers* case, he states:

> The interpretation of the words of the Uniform Sales Act "to be manufactured by the seller," in the present case and also by the Massachusetts court, is much too narrow and literal. It clearly fails to carry out the purpose of the statutory exception. Once more "the letter killeth." 2 Corbin, Contracts § 477 (1964 Supp, p. 148).

See, also, 16 Cornell Law Quarterly 412 (1931).

In *E. G. Lumber Co. v. New York Bondstone Corp.,* 15 Misc. 2d 985, 987, 179 N.Y.S.2d 45 (1958), the court stated, quoting from *Morse v. Canasawacta Knitting Co.,* 154 App.

Div. 351, 139 N.Y.S. 634 (1912), *aff'd without op.* 214 N.Y. 695, 108 N.E. 1101:

> "I am unable to see any reason for a distinction when that article is manufactured by an employee in the shop of the seller, or an employee outside his shop. Clearly the seller is bound to pay for the article which is thus manufactured for the vendee. The article which he is thus required to pay for is of little or no value in his hands because made of peculiar moulds for a special purpose. If there be any reason for excluding from the effect of the statute, a contract for manufacturing an article by the seller himself, the same reason would seem to apply to a contract for the manufacturing in a special mould where the seller has procured some third party to do the work for him."

■ We agree with the reasoning of Professor Corbin, *supra,* and the reasoning quoted in *E.G. Lumber Co. v. New York Bondstone Corp., supra.* The obvious thrust of the statutory exception is to exclude from the operation of the statute of frauds those situations where the seller finds himself holding goods manufactured to a buyer's specifications and therefore unsalable on the general market. Neither is this interpretation inconsistent with the main objective of this section of the statute of frauds: to obtain certainty in contracts for the sale of goods and thereby avoid the opportunity of fraud being practiced by a seller upon a buyer. Under the exception of the statute, the fact that the goods are manufactured especially for the buyer and are unsalable to others accomplishes the objective of certainty consistent with the general purpose of the statute.

■ Language within a statute must be read in context with the entire statute and construed in a manner consistent with the general purposes of the statute. See, *e.g., State ex rel. Public Util. Dist. No. 1 of Skagit Cy. v. Wylie,* 28 Wn.2d 113, 182 P.2d 706 (1947). In *In re Horse Heaven Irrigation Dist.,* 11 Wn.2d 218, 226, 118 P.2d 972 (1941), we stated:

> The courts, in pursuance of the general object of giving effect to the intention of the legislature, are not controlled by the literal meaning of the language of the statute, but the spirit or intention of the law prevails over the letter thereof. 59 C. J. 964.

"Since all statutes must be interpreted before they can be applied, might not the rule be announced that all statutes are subject to construction, and if there be more than one possible construction, that meaning will be adopted which most reasonably seems to be the one intended by the legislature . . . ." Crawford's Statutory Construction, 283, § 175.

Commenting upon the literal construction of the language of the statute "manufactured by the seller" the court in *E.G. Lumber Co., Inc. v. New York Bondstone Corp., supra,* stated at 989:

*It is my considered opinion that in the Eagle Paper Box Co. case the court gave undue significance to the words "by the seller" which follow the word "manufactured" in subdivision 2 of section 85. The emphasis I think should be placed upon the words "especially for the buyer".* I think the reasoning in the *Morse* case was not rendered less valid by the subsequent adoption of subdivision 2 of section 85 of the Personal Property Law. Indeed, the development of modern business practices adds force and validity to that reasoning. The principal ground for the decision in the *Eagle Paper Box* Co. case is that the use of the words "by the seller" in subdivision 2 must be given literal effect, otherwise, said the court "the addition of these words would have been not only unnecessary but misleading." I do not quite agree with this reasoning. *It seems to me that even if the words "by the seller" had not been inserted in that subdivision they would be "understood".* Of course there would be no room for doubt if the section provided that the goods were to be manufactured "by the seller *himself*" or words to that effect. But it does not so provide. In the circumstances, *I think it may be argued, no less logically than in the Eagle Paper Box Co. case, that by omitting the word "himself" the Legislature intended that the exception in that section should apply if the seller has someone else make up the goods for him. Certainly he still remains the manufacturer, the producer of the goods, as we today understand that term.* (Italics ours.)

We believe that a literal construction of the language "manufactured by the seller" would thwart the manifest purpose of the exception of the statute. It is our construction of the statute that the exception applies when the goods

procured by the seller at his expense are manufactured especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business.

It should be noted that this holding is consistent with § 2-201 of the Uniform Commercial Code, scheduled to take effect in this state on June 30, 1967.

The judgment is affirmed.

ROSELLINI, C. J., OTT and HALE, JJ., and RUMMEL, J., Pro Tem., concur.