■ SYMPHONE TEXTILES LIMITED, Appellant, v SANTEE PRINT WORKS, Respondent.—Order, Supreme Court, New York County, entered on April 7, 1978, affirmed, without costs and without disbursements. Concur—Kupferman, J. P., Sandler, Lane and Bloom, JJ.

Sullivan, J., dissents in the following memorandum. I would reverse the order of Special Term and grant the motion to strike the first, third and fourth affirmative defenses. On June 7, 1974, the defendant buyer entered into a written confirmation of sale with E. Samlo, Inc., purporting to act for the plaintiff seller, to purchase 632,221 yards of fabric which plaintiff had available at Charleston, South Carolina. The confirmation was executed in New York. Delivery of the goods was to take place in Charleston. Although no date for delivery was specified, there was a provision that storage charges were to be borne by the buyer after June 30, 1974. The plaintiff corporation, which is in the business of manufacturing and selling fabric, has its principal office in Hong Kong. It normally negotiates its New York contracts through a broker, Samlo, which, ordinarily, must seek home office approval. It is clear, however, and there is no evidence to the contrary, that in this isolated instance home office approval was not required since the goods had been available at the port of entry (Charleston, S. C.) for some time. Hence, the broker was permitted to close the deal so that the goods could be promptly disposed of. In fact, H. C. Young, a corporate officer of plaintiff, had been in New York for some of the negotiations in January of 1974, before the signing of the confirmation of sale, and expressly authorized Samlo in the presence of defendant's president, Victor Barocas, to act in plaintiff's behalf. Plaintiff claims that, except for a small quantity (approximately 11,000 yards), defendant refused to take physical possession of the goods, forcing it to sell the balance at a net loss of $127,100.64, for the recovery of which it has commenced this action. Before answering, defendant moved to dismiss the complaint on the ground that plaintiff, a foreign corporation, was doing business in New York without authority, and therefore lacked capacity to sue. (Business Corporation Law, § 1312, subd [a].) After a hearing on a reference, Special Term accepted the Referee's recommendation and denied the motion. But, in support of the motion to dismiss, defendant's president, who was personally involved in the negotiations and who signed the confirmation of sale, submitted an affidavit stating, *inter alia,* that the "said negotiations were culminated by the parties entering into a written contract for the sale by plaintiff of the goods" and that "All subsequent negotiations took place in New York, culminating in a written contract executed in New York." After denial of its motion defendant interposed an answer, raising four affirmative defenses, against three of which plaintiff moved to strike. The second, not at issue on this motion and preserved for trial, alleged fraudulent misrepresentation as to the quality of the goods. Shorn of its excess verbiage the first and third defenses are essentially the same. They allege that in the absence of a confirmation in

writing by plaintiff there was no binding contract between the parties. The fourth defense asserted that the sale was not to be effective until defendant was afforded the opportunity to inspect the goods. Finding issues of fact, Special Term denied the motion in its entirety. After its lack of success on the motion to dismiss, defendant, not surprisingly, took a new tack in opposing the motion to strike the defenses. Defendant's president asserted a view of the facts different from what he alleged on the original motion. He now states that subsequent to making his initial affidavit, he ascertained that plaintiff had denied Samlo's authority to bind it, and had claimed that all contracts were subject to confirmation by its home office. The argument is disingenuous. There are no new facts. Defendant's belated discovery of the "true facts" is based on a reading of an affidavit submitted by plaintiff's managing director in opposition to the motion to dismiss and answers to interrogatories, in which plaintiff denied that Samlo was its agent for the regular course of business in New York but stated that it was specifically authorized to close this particular transaction without prior approval because the goods had already been shipped and were being stored at Charleston. Although a motion for summary judgment might have been the more appropriate vehicle to expose these three defenses as sham, there is no reason why the relief requested should not have been granted. That the issues raised in these defenses might also be justiciable under a general denial, which defendant has interposed, should not render academic any disposition of the defenses. CPLR 3211 (subd [b]) provides that "A party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." There is no merit to the three defenses at issue, as can be gleaned from the admissions made in the prior affidavit and stipulation upon which plaintiff has now relied in making its motion to strike the defenses. Defendant should be estopped from denying the existence of the contract by virtue of these same admissions. In his affidavit in support of the motion to dismiss defendant's president stated: "On or about January of 1974, the defendant was visited at its corporate headquarters in New York City by Mr. T.Y. Tung, vice-president of [plaintiff], Mr. H.C. Young, Managing director of [plaintiff] and Mr. Samuel Wang, of E. Samlo, Inc., hereafter referred to as Samlo, a New York based concern doing business at 303 Fifth Avenue, New York, New York. *At that time the Corporate officers of the plaintiff informed me that Samlo was the official representative of the plaintiff in New York and further informed me that Samlo has full authority to represent and bind the plaintiff in any business transaction within this state.* At that time the persons just named informed me that plaintiff was in the business of manufacturing greige goods and that they regularly sold said goods in New York City. They similarly offered to sell me certain goods and preliminary negotiations ensued for that purpose. No deal was then consummated but instead it was agreed that the negotiations would continue between [defendant] and Samlo, the plaintiff's authorized representatives in New York. In the next several weeks, Samlo visited my premises on several occasions to continue the negotiations for the sale of these goods. *Finally said negotiations were culminated by the parties entering into a written contract for the sale by plaintiff of the goods. * * * This contract is unambiguous on its face and clearly shows that the transaction was between the defendant herein and [plaintiff], through its designated agent, Samlo.* In the instant case it cannot be claimed that Samlo did not have authority to bind plaintiff and that the contract was subject to plaintiff's home office. *Where Samlo did not possess such authority and home office approval was needed, Samlo would present such a*

*writing as evidenced by Exhibit C attached hereto, which states that, 'this sales note is superseded by seller's own contract.' The inclusion of said statement would evidence that in that case Samlo was not vested with the full authority to bind the seller but rather the contract would be superseded and confirmed by the sellers' own writing.* The contrary exists in the instant case. Samlo was more than a mere soliciting agent. It was the New York presence of the plaintiff and as such fully authorized to and capable of representing the corporate plaintiff in the regular course of its business in this state. *There was no requirement that the instant contract had to be confirmed by the plaintiff at its home office but rather Samlo had full authority to bind the corporate plaintiff * * * here in New York."* (Emphasis added.) Defendant also stipulated to the same effect on the record during pretrial proceedings: "It is stipulated by the parties that the transaction between the plaintiff and defendant, which is the basis of this lawsuit, was entered into by the plaintiff and its officers and the defendant and its officers and the agent or broker of the plaintiff, E. Samlo Inc., within the State of New York." While it may have been expedient for defendant to repudiate these earlier judicial admissions, its president's explanation that he subsequently discovered that Samlo was not plaintiff's agent does not negate the fact that plaintiff authorized Samlo to bind it in this particular transaction, and that it so notified defendant's president during the negotiations. Nor does plaintiff's success in the prior motion in showing that it was not engaged in a regular course of business in this State through the agency of Samlo mean, as defendant would have the court believe, that Samlo lacked authority in this instance. Simply because there were lines for signatures by plaintiff and defendant to confirm the agreement, while arguably significant, does not create a requirement for defendant's signature if Samlo was otherwise authorized to bind plaintiff. Significantly, unlike a prior transaction between the parties in 1972, there was no provision in the confirmation of sale of June 7, 1974 that "This sales note is superseded by Sellers [sic] own Contract." Nor, as in their earlier transaction, does the confirmation show that a copy was being sent to the Hong Kong office. The fourth affirmative defense asserting that the contract of sale was subject to an inspection of the goods is also sham and frivolous. The only request for an inspection appears in a letter dated May 2, 1974, well over one month before the confirmation of sale was executed. Even that letter conceded that defendant had already seen some samples. The inspection request was made in order "to evaluate the contract." Nothing in the confirmation indicated that the contract of sale was subject to inspection. Of course, nothing in the notice of confirmation would impair defendant's statutory right to inspection at the time of delivery or identification of the goods. (See Uniform Commercial Code, § 2-501.) Defendant cannot expand the terms of the writing by adding a term which is at variance with the writing. (Uniform Commercial Code, § 2-202; *Juilliard v Trokie,* 139 App Div 530, affd 203 NY 604; *Thomas v Scutt,* 127 NY 133.) While comprehensive and certainly innovative, the affidavit by defendant's president submitted in opposition to the instant motion suggests no reason why his original averments as to the events leading up to the execution of the June 7, 1974 confirmation of sale should now be rejected.